**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GREG BRAUN, | CASE NO. CV-F-02-6482 AWI LJO |
| Plaintiff, | **ORDER ON PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS** (Doc 133) |
| vs. | |
| AGRI-SYSTEMS, | |
| Defendant. | |

Pursuant to a notice filed on August 19, 2005, Plaintiff Greg Braun, as Plan Agent for Coast Grain Company, seeks monetary sanctions against defendant Agri-Systems and its counsel Henry Nunez for failure to obey this Court's prior order of March 29, 2005 (Doc. 108) to respond to Coast Grain's third set of special interrogatories No. 1-6. Defendant Agri-Systems and counsel Henry Nunez filed an opposition on September 23, 2005 and supplemented the evidence with a declaration submitted to the Court on October 14, 2005. Braun filed a reply on September 30, 2005.

The matter came on regularly for hearing on October 14, 2005 in Department 6 of the above-entitled court. Greg Braun appeared by counsel Steven McGee and Amanda Glenn of Kimble, MacMichael & Upton and by Riley Walter of the Walter Law Group. Defendant Agri-Systems appeared by counsel Henry Nunez, Law Offices of Henry Nunez and by Jon Doak, Doak & Associates. Having considered the moving, opposition, and reply papers, as well as the arguments of counsel and the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Overview

Coast Grain was in the business of operating grain mill facilities in California. It filed bankruptcy and its plan was confirmed on October 9, 2003. Plaintiff Greg Braun is the plan Agent and pursues this action on behalf of Coast Grain. Agri-systems was in the business of designing and constructing grain mill facilities. Agreements were entered into between Coast Grain and Agri-Systems under which Agri-Systems was to design, engineer and construct a grain mill facility, including the construction of a fast rail receiving and steam flaking system, on property owned by Coast Grain on Avenue 12 in Madera ("project"). By this lawsuit, Coast Grain (through plaintiff) seeks to recover damages it claims to have suffered as a result of alleged acts, omissions and breaches of Agri-Systems. Agri-Systems denies any further responsibility to Coast Grain and alleges that Agri-Systems has been damaged by virtue of nonpayment of contractual obligations.

### B. Overview of Plaintiff's Arguments

1. **Sanctions should be imposed for engaging in discovery abuses.**

Most of Agri-Systems' recent discovery abuses are related to Coast Grain's Third Set of Special Interrogatories no. 1-6, as compared to deposition testimony and Bankruptcy evidentiary testimony. The third set of interrogatories asked for job costs associated with the project.[1]

In a December 3, 2003 deposition of Robert Hamlin, the President of Agri-Systems, testified that job costs were "very sketchy." He testified he did not know the amount of job costs. As a result, Coast Grain propounded the Third Set of Special Interrogatories to inquire what Agri-Systems actual job costs were on the project.

Agri-System then filed for Bankruptcy in the District of Montana on January 14, 2004 and discovery was stayed. The parties stipulated to relief of stay, to allow this action to go forward, in August 19, 2004, the Montana Bankruptcy Court approved the relief of stay. The parties then agreed the

---

[1] In his briefs, plaintiff recites alleged "discovery abuses" that preceded the responses to the interrogatories. The Court finds that these discovery abuses are unrelated to the job cost interrogatories and are irrelevant to this motion. Monetary sanctions are all that are requested and are not sought for prior alleged abuses.

2

1  Third Set of Interrogatories would be answered.

3  When answers were provided, Agri-Systems did not answer Interrogatories no. 1-6. The parties
4  met and conferred after which Agri-Systems amended its answers by interposed boilerplate objections
5  stating the questions were "overbroad, incomplete and vague and ambiguous." Coast Grain brought a
6  motion to compel on March 1, 2005. The Court granted the motion on March 29, 2005 and ordered
7  further answers to Interrogatories no. 1-6.

8  On April 18, 2005, Agri-Systems amended its answers pursuant to the Court's order. In response
9  to the interrogatories asking for the job costs, Agri-Systems answered that it was "unable to determine"
10 the costs and that "thousands of documents" memorialize the costs. Plaintiff contends that the responses
11 are inadequate and in direct contravention of the Court's order which requires Agri-Systems to properly
12 identify the documents in accordance with Rule 33 (d).

13 In fact, plaintiff soon learned that Agri-Systems maintained job cost records which were readily
14 available to it.

15 **2.    Montana Bankruptcy Hearing**

16 An evidentiary hearing on April 25-27, 2005 in Agri-Systems' bankruptcy's proceeding was
17 conducted in Billings, Montana regarding an estimate of Coast Grain's claims against Agri-Systems.
18 Live testimony was taken from Matthew Hamlin, Vice President of Sales, and Robert Hamlin, President
19 of Agri-Systems.

20 Matthew Hamlin testified that Agri-Systems has a computer system that tracks job costs on a job
21 by job basis and that the system was used on the project that is in dispute in this case; that they track
22 costs on every project and that the costs records are still maintained. (Exh. P, McGee Decl. p. 547-548.)

23 Robert Hamlin testified on April 27, 2005 that the contract costs for the October contract
24 exceeded $1.5 million. He stated he calculated the costs because "I went back and looked at our costs."
25 Thus, the court ordered responses, in which Agri-Systems amended its answers on April 18, 2005 after
26 the court order "unable to determine since the actual job costs have not been tabulated", was a complete
27 contradiction. Robert Hamlin also testified that he had prepared written job cost estimates and had
28 provided them to Agri-Systems counsel, Mr. Nunez, before the court ordered responses were drafted and

3

before Mr. Hamlin verified the Court ordered amended response. Plaintiff submits transcripts of the testimony from Mr. Hamlin. Mr. Hamlin states he pulled their "costs sheets, various costs and allocations" to come up with an estimate; yet, he signed a verification that stated Agri-Systems was "unable to determine" actual costs. Mr. Hamlin testified that he had prepared preliminary job cost estimates and provided them to his California counsel, Mr. Nunez. The cost estimates related to the first and second contract between the parties. (Exhibit Q to McGee Decl.) Thus, Robert Hamlin testified that he had given Mr. Nunez the preliminary compilation **prior** to Agri-Systems providing amended answers as ordered by the court and stating that it was unable to determine the costs.

3. **Deposition of comptroller Janice Hamlin**

Plaintiff argues that due to obstructionist tactics, plaintiff had to depose Janice Hamlin who was designated as the person most knowledgeable about Agri-Systems accounting practices. Ms. Hamlin testified that Agri-Systems has an accounting system in place that tracks job costs records and that Agri-Systems inputs their job costs as projects progress. She testified that the job cost tracking was used on the project in dispute that a tabulation of the job costs was compiled in January 2005. She testified that she can print out a summary of the job costs that consist of about nine pages that spells out all the job costs. (Exh. V to McGee Decl.)

**C.    Summary of Agri-Systems' Opposition Arguments**

Sanctions should not be imposed as counsel and the party complied with the court order in good faith. Counsel, in signing discovery, need only make a reasonable inquiry into the facts. Sanctions are a matter of judicial discretion.

Robert Hamlin's answers at his deposition were not evasive but based on memory. Coast Grain wants definitive numbers but since the contract was set for "amount plus change orders," Agri-Systems did not track all job costs. Agri-Systems provided Coast Grain three sets of answers to the third set of interrogatories before filing the motion. Agri-Systems provided amended answers again after the March 28, 2005 court order. Coast Grain did not inform Agri-Systems that the answers were evasive false and misleading. The answers are not evasive, incomplete false or misleading.

Coast Grain asked for all job costs yet did not define it adequately. "Actual job costs" is vague and ambiguous because it could include direct costs but it does not identify whether it includes allocated

4

or indirect costs. Agri-Systems does not maintain an index or list of direct cost source documents. Agri-Systems did not maintain any record that could be considered to include all actual job costs.

Attached as Exhibit 3 to Nunez' declaration is the third amended interrogatories answers that are the latest version, served in June 2005. Coast Grain did not tell the Court about these amended answers. Moreover, Coast Grain has not been forth coming with its own discovery as set out in the declarations of Nunez and Jon Doak.

The depositions of Matt and Janice Hamlin were scheduled by Coast Grain in due course of discovery. McGee booked his air fare for the deposition on May 16, 2005, then signed the deposition notice on May 17, 2005 and mailed it on May 18. This was all after receiving summaries of some job costs on April 25, 2005 and before Amended responses were produced. Further, the depositions of Matt and Janice Hamlin covered more than just "job costs." There was benefit that plaintiff derived from the depositions unrelated to the job costs.

Coast Grain has used the discovery process to harass Agri-Systems. Coast Grain has propounded 7 sets of interrogatories, totaling some 321 questions, propounded 5 sets of Document requests totaling 64 requests. Agri-Systems produced over 12,000 copies of documents. Coast Grain, on the other hand, has not been forthcoming with its discovery answers.

## ANALYSIS AND DISCUSSION

Plaintiff seeks monetary sanctions in the amount of $30,555.30 for bringing its prior motion to compel, present motion for sanctions, fees incurred in communications in "meet-and-confer," fees in scheduling and serving notices of depositions, preparation and travel expenses for the depositions of Matthew Hamlin and Janice Hamlin of Agri-Systems which were conducted in Billings, Montana. Plaintiff seeks sanctions against both counsel and the party.

This Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996); *Lokary v. Kayfetz*, 974 F.2d 1166, 1170 (9th Cir.), *cert. denied, sub. nom., Pacific Legal Foundation v. Kayfetz*, 508 U.S. 931, 113 S.Ct. 2397 (1993); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). The Ninth Circuit Court of Appeals has observed:

Whenever an allegation is made that an attorney has violated his moral and ethical

5

responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession.

*Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324-1325 (9th Cir.), *cert. denied sub nom. Shell Oil Co. v Gas-A-Tron of Ariz.*, 429 U.S. 861, 97 S.Ct. 164 (1976).

The determination to sanction is subject to a court's sound discretion. *See Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996); *Wages v. Internal Revenue Service*, 915 F.2d 1230, 1235 (9th Cir.) (Award of sanctions for filing pleadings which vexatiously multiply the proceedings), *cert. denied*, 489 U.S. 1096, 111 S.Ct. 986 (1991); *Erickson v. Newmar Corp.* 87 F.3d 298, 303 (9th Cir. 1996). "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir.) (internal quotations omitted), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757 (1990).

To seek sanctions, plaintiff relies on the Federal Rules of Civil Procedure and this Court's Local Rules and inherent powers.

**A.     Standards for Sanctions**

    **1.     Local Rules**

Federal judges have broad powers to impose sanctions for abuses of process. *Gas-A-Tron*, 534 F.2d at 1324-1325. The sources of power to sanction include federal statutes and procedural rules, local rules, and a court's inherent power. For instance, this Court's Local Rule 11-110 provides: "The failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."

This Court's Local Rule 83-184(a) addresses attorney discipline and provides:

> In the event any attorney subject to these Rules engages in conduct that may warrant discipline or other sanctions, any Judge or Magistrate Judge may initiate proceedings for contempt under 18 U.S.C. § 401 or Fed. R. Crim. P. 42,[2] or may, after

---

[2] 18 U.S.C. § 401 authorizes a fine or imprisonment, at a court's discretion, for contempt of its authority, and for misbehavior of any person in the court's presence "or so near thereto as to obstruct the administration of justice." F.R.Crim.P. 42(b) punishes as criminal contempt conduct which a "judge saw or heard . . . or [] committed in the actual

6

reasonable notice and opportunity to show cause to the contrary, take any other appropriate disciplinary action against the attorney. In addition to or in lieu of the foregoing, the Judge or Magistrate Judge may refer the matter to the disciplinary body of any Court before which the attorney has been admitted to practice.

Neither this Court's Local Rules nor the Federal Rules of Civil Procedure clearly define "other appropriate disciplinary action" for attorney conduct short of criminal contempt. Nonetheless, federal judges have an "arsenal of sanctions" to impose for unethical behavior and including monetary sanctions, contempt, dismissal and disqualification of counsel. *Erickson*, 87 F.3d at 303. The California Rules of Professional Conduct and the State Bar Rules of California may also provide appropriate sanctions. *See* Local Rule 83-180(e) (adopting California Rule of Professional Conduct and applicable court decisions as standards of professional conduct in this district).

Under California law, an attorney may use only methods "as are consistent with truth, and never seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." Cal. Bus. & Prof. Code, § 6068(d). "In presenting a matter to a tribunal, a member: (A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth; (B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice of false statement of fact or law." Cal. Rules of Professional Conduct, Rule 5-2000.

**2.    Rule 37(b) Sanctions**

Under F.R.Civ.P. 37(b)(2), if a party "fails to obey an order to provide or permit discovery" a court "may make such orders in regard to the failure as are just," including to:

1. Designate facts as established;
2. Refuse to allow the disobedient party to support or oppose designated claims;
3. Prohibit the disobedient party from introducing designated matters in evidence;
4. Strike out pleadings or parts thereof;
5. Stay further proceedings until an order is obeyed;
6. Dismiss an action, proceeding or any part thereof; or
7. Render judgment by default against the disobedient party.

---

presence of the court."

7

F.R.Civ.P. 37(b)(2)(e) also authorizes monetary sanctions.

In lieu of F.R.Civ.P. 37(b)(2)(A) – (E) orders or in addition thereto, "the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." F.R.Civ.P. 37(b)(2). F.R.Civ.P. 37(b)(2) "must be distinguished from Rule 37(a) which provides for the award of expenses resulting from efforts to secure an order compelling discovery." *Liew v. Breen*, 640 F.2d1046, 1051 (9th Cir. 1981). Thus, "attorney-time before and during" a hearing in which a court order is issued is "not attorney-time incurred on account of failure to obey an order" and is not awardable. *Liew*, 640 F.2d at 1051; *see also Wm. T. Thompson Co. v. General Nutrition Corp.*, 104 F.R.D. 119, 122-122, n. 1 (C.D. Cal. 1985) (not entitled to sanctions for work done to obtain an order compelling discovery).

### 3. Inherent Power of Court to Impose Sanctions

Federal courts have inherent power to impose sanctions, including an award of attorney's fees, against attorneys and parties for "bad faith" conduct or "willful disobedience" of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 101 S.Ct. 2123, 2132 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-766, 100 S.Ct. 2455, 2463-2464 (1980). The court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132. Such inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Chambers*, 501 U.S. at 42; 111 S.Ct. at 2123.

This "Bad faith" is slightly different than bad faith under 28 U.S.C section 1927. "Bad faith" means a party or counsel acted "vexatiously, wantonly or for oppressive reasons." *Chambers*, 501 U.S. at 45-46, 111 S.Ct. at 2133; *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259, 95 S.Ct. 1612, 1622 (1975). Bad faith is tested objectively. "[A] district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination and may be reversed only if it is clearly erroneous." *Ford v. Temple Hosp.*, 790 F.2d 342 (3rd Cir. 1986); *See Baker v. Cerberus, Ltd.*, 764 F.2d 204, 210 (3rd Cir. 1985). There must be "some indication of an intentional advancement

of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." *Ford,* 790 F.2d at 347.

When exercising discretion under its inherent sanction powers, a court is guided by considerations applicable to sanctions under the Federal Rules of Civil Procedure. Factors to consider include:

1. The nature and quality of the conduct at issue;
2. As between attorney and client, who is responsible for the culpable conduct;
3. Whether there was a pattern of wrongdoing to require a stiffer sanction;
4. The sanctioned party's ability to pay;
5. Whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice; and
6. The existence of mitigating factors.

*Republic of Phillippines v. Westinghouse Elec.*, 43 F.3d 65, 74 (3d Cir. 1994).

An attorney's fee award under a court's inherent power is intended to vindicate judicial authority, not to provide a substantive remedy to an aggrieved party. "The wrong done was to the court." *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (3rd Cir. 1994).

**B.     Substantive Merits of the Motion**

**1.     Prior Court Order**

On March 29, 2005, this Court issued an order on plaintiff's motion to compel further answers to plaintiff' third set of interrogatories, No. 1-6. The interrogatories stated:

> **Interrogatory No. 1:** What were Agri-Systems' Actual JOB COSTS with regard to the work performed on the PROJECT?
>
> **Interrogatory No. 2:** Identify all documents which relate to, refer, discuss any JOB COSS incurred by Agri-Systems on the project.
>
> **Interrogatory No. 3:** What were Agri-Systems actual JOB COSTS with regard to work perform in connection with the Original Contract.
>
> **Interrogatory No. 4:** Identify all documents which relate to refer to or discuss any JOB COSTS incurred by Agri-Systems under the Original Contract.
>
> **Interrogatory No. 5:** What were Agri-Systems' actual JOB COSTS for the work performed on the OCTOBER CONTRACT

**Interrogatory No. 6:** Identify all documents which relate to refer to or discuss any JOB COSTS incurred by Agri-Systems under the OCTOBER CONTRACT.

Agri-Systems had responded to the interrogatories that "Documents identified for interrogatories 1-6 have been previously produced to plaintiff." This Court found that the response to Interrogatories 1-6 was inadequate and ordered Agri-Systems to supplement its answers in conformity with Rule 33(d) within 20 days. (Doc. 108, Order on Motion to Compel.)

### 2. Failure to Provide Information

In response to this Court's order, Agri-Systems supplemented its answers to the interrogatories on April 18, 2005. In response to the interrogatories asking for the job costs (Interrog. No1, 3, 5), Agri-Systems answered:

> "Unable to determine, since the actual job costs have not been tabulated. The information can be obtained by the photocopy of all costs incurred, as set out in Interrogatories no. 2, plus allocation of overhead costs."

In responses to the interrogatories asking Agri-Systems to identify documents, Agri-Systems answered:

> "There are thousands of documents. Said documents include but are not limited to supplier invoices; payroll records; travel receipts; automobile and fuel cost receipts' rental expense receipts; freight receipts; credit card receipts; insurance documents indicating amount of premiums paid; office supplies and expense receipts; telephone receipts; payroll tax records; purchase receipts; financing document; subcontractor invoices; equipment rental receipts and overhead expense invoices and receipts. The documents are located at 1300 Minnesota Avenue, Billings, MT 59101 and are available for copying at plaintiff's expense."

Agri-Systems argues that it later amended its responses on June 13, 2005 with cost figures. This amendment, however, was untimely, and was not the amendment made pursuant to the Court's order (if it was, it was untimely because the order required a response 20 days after March 29.) It is an amendment that Agri-Systems *may* have made due to the evidence uncovered at the Bankruptcy proceeding and at the depositions.

### 2. The Job Cost information was Available

Plaintiff has presented evidence that the information that it sought on the job costs was available as early as January 2005. The responses to the interrogatories did not indicate that the job cost information was obtainable - the answers represented that the information was not obtainable. The responses to the interrogatories did not indicate that Agri-Systems was attempting to compile the cost

information - the answers stated that the information could not be determined. Plaintiff presents evidence that it was only through the testimony elicited in the Montana Bankruptcy hearing that plaintiff stumbled upon the fact that cost information for projects was maintained in the regular course of Agri-Systems' business. Agri-Systems maintains a computer systems into which its project cost information is entered and maintained. The computer system has cost information for the Madera project at issue in this litigation.

Agri-Systems tries to back off the availability of the cost information by arguing: (1) it did not know what "actual" job costs meant, whether it included allocated or indirect costs, etc., (2) the computer system does not maintain any cost other than direct costs.

Agri-Systems' arguments would be more compelling had Agri-Systems provided any information on job costs. Instead, what Agri-Systems did was (1) not answer, (2) object, (3) answer that "we gave it to you," and (4) say "we cannot determine." This is not good faith response to the discovery. The party answering interrogatories must furnish "such information as is available to the party." Fed.R.Civ.P. 33(a). Moreover, Robert Hamlin signed a verification saying that Agri-Systems "cannot determine" the job costs, at a time when, as he testified in Montana, he had already pulled costs sheets to come up with costs. (Exh.Q to McGee Decl.)

Plaintiff seeks sanctions against plaintiff's counsel for the conduct in responding to the discovery. Plaintiff argues that at the Montana Bankruptcy hearing, there was testimony that preliminary cost information was provided by defendant to counsel as early as January 2005. At oral argument on the motion, it was represented that the cost information was not provided to counsel until after the Court's March 2005 order. Nonetheless, counsel signed the interrogatory answers, which stated that the cost information could not be determined, while some of the cost information was indeed available.

**3.  Agri-Systems' claims of Braun's obstructionist tactics**

Agri-Systems argues that its discovery propounded on plaintiff has been met with objections, failure to produce and generally obstructionist tactics. The discovery conduct of plaintiff, however, is not before the Court for decision. At oral argument, defense counsel conceded this point.

**4.      Amount of Sanctions Requested**

Plaintiff asks for $30,695.30 (elsewhere in its papers, it asks for $30,555.30) broken down as follows:

- $2,745.00 - for fees in making the March 1, 2005 motion to compel.
- $15,493 in fees in scheduling and serving notices of deposition, deposition preparation, travel and deposition of Matthew Hamlin and Janice Hamlin.
- $12,317 in preparing this motion for sanctions, anticipated response and hearing appearance.

Plaintiff attaches as Exhibit BB to the Declaration of McGee a chart of fees and expenses and Exhibits EE-FF which provide detailed billing.

The Court denies the request for fees in making the March 1, 2005 motion to compel. The $2,745.00 for fees for the March 1, 2005 motion to compel are not awardable under Fed.R.Civ.Proc.37(b)(2). *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981) ("attorney-time before and during" a hearing in which a court order is issued is "not attorney-time incurred on account of failure to obey an order" and is not awardable.)

As to the remainder of the requested sanctions, Agri-Systems does not object to the amounts requested or as to the hourly rate charged by counsel, except to argue that the depositions of the Matthew Hamlin and Janice Hamlin were taken during the normal course of discovery.

At oral argument, plaintiff's counsel acknowledged that plaintiff obtained some benefits from the depositions of Matthew Hamlin and Janice Hamlin which were unrelated to the job costs information. Accordingly, the Court finds that half of the costs for the depositions are attributable to pursuing job cost information and therefore awards half of the requested fees and costs, or $7,746.50.

The Court also awards the requested amount of $12,317 for preparing this motion and the meet and confer process. Therefore, total costs awardable are $20,063.50.

The Court finds that the responsibility for the sanctions are: $18,063.50 as against defendant Agri-Systems, solely, and $2,000, joint and several, as against defendant Agri-Systems and the Law Office of Henry Nunez.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff's motion for sanctions. The Court awards discovery sanctions of $18,063.50 as against defendant Agri-Systems, solely, and $2,000, joint and several, as against defendant Agri-Systems and the Law Office of Henry Nunez, payable to plaintiff Greg Braun, Plan Agent for Coast Grain.

IT IS SO ORDERED.

**Dated:   October 14, 2005**                    **/s/ Lawrence J. O'Neill**
b9ed48                                            UNITED STATES MAGISTRATE JUDGE