1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **GREGG BRAUN, Chapter 11 Trustee**<br>**for COAST GRAIN COMPANY, a**<br>**California corporation,** | ) ) ) | **CV-F-02-6482 AWI SMS** |
| | ) | **ORDER DENYING** |
| **Plaintiff**, | ) ) | **PLAINTIFF'S MOTION FOR**<br>**PARTIAL SUMMARY** |
| **v.** | ) ) | **JUDGMENT ON**<br>**DEFENDANT'S** |
| **AGRI-SYSTEMS, a Montana** | ) ) | **COUNTERCLAIM** |
| **corporation,** | ) ) | |
| **Defendant** | ) ) | |
| ―――――――――――――――――――――― | ) ) | |
| **AND RELATED COUNTERCLAIMS** | ) ) | |
| ―――――――――――――――――――――― | ) | |

**INTRODUCTION**

        This is an action by Greg Braun ("Braun"), trustee for the bankruptcy estate of Coast

Grain Company, a California Corporation ("Coast") against Agri-Systems, a Montana

Corporation ("Agri-Systems") for alleged losses related to a construction project in Madera,

California.  Agri-Systems filed a counterclaim (the "Counterclaim") alleging causes of action

related to the failure of Coast to make payments under existing construction contracts.  One

aspect of Agri-System's Counterclaim against Coast is a mechanic's lien (the "Lien") filed

originally in Superior Court of Madera County and since consolidated into the action in this

court.  The Lien amount is $1,030,000.00.  In the instant motion for partial summary

judgment, Coast alleges the Lien amount includes charges that are non-lienable and seeks to

exclude those charges from the Lien amount.  Specifically, Coast seeks to exclude costs for

demobilization and what it contends are non-liquidated interest charges which together total

$222,091.42 .  Braun contends the amount of the Lien should be reduced by this amount or,

in the alternative, that the Lien should be forfeited in its entirety.  This Court has original

subject matter jurisdiction pursuant to 28 U.S.C., sections 1331 and 1340.  Venue is proper in

this Court.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no

genuine issue as to any material fact, and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755

F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d

1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial
> responsibility of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any,"
> which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Once the moving party has properly

supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with

respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact

reasonably could find in [its] favor."  DeNovellis v. Shalala, 124 F.3d 298, 306 (1st

Cir.1997), citing Celotex, 477 U.S. at 322-25.

"A dispute is genuine if the evidence about the fact is such that a reasonable jury

could resolve the point in the favor of the non-moving party.  A fact is material if it carries

with it the potential to affect the outcome of the suit under the applicable law."  Sanchez v.

Alvarado, 101 F.3d 223, 227 (1st Cir.1996) (internal quotations and citations omitted).  In

attempting to establish the existence of this factual dispute, the opposing party may not rely

upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists as to each issue on which it would have the burden of proof at trial.  Rule 56(e);  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986); First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**GENERAL FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 1, 2000, Coast entered into a construction contract (the "March Contract") with Agri-Systems for the construction of a "steam flaking facility and agricultural processing plant" (the "Project") in Madera, California. On August 1, 2001, more than one year before institution of proceedings in this court, Agri-Systems filed a complaint in Madera County Superior Court (the "state action") for breach of contract and three other causes of action relating to Coast's alleged failure to pay $1,030,000 in outstanding invoices. The Lien was filed as a part of the proceeding in the state action. On October 14, 2001, the parties entered into a second construction contract (the "October Contract") for labor, tools and equipment necessary to complete certain portions of the Project that had not been completed under the March Contract. On October 15, 2001, an involuntary Chapter 11 bankruptcy petition was filed against Coast. Braun was appointed trustee of the Bankruptcy estate.

On November 27, 2002, Braun, with permission of the bankruptcy court, filed the complaint in this case alleging breach of contract, breaches of express and implied warrantees, negligence, breach of confidentiality agreement and requesting declaratory relief. On July 9, 2003, this Court denied Agri-System's motion to dismiss Braun's Complaint. On August 12, 2003, Agri-Systems filed a Counterclaim. The counterclaim has been amended twice, the currently operative pleading being the Second Amended Counterclaim filed March 4, 2005 ("SACC"). Pertinent to this motion, Agri-Systems' SACC alleges claims for relief on three theories to recover the $1,030,000.00 sum Agri-Systems claims is owing from the March Contract. The SACC incorporates the Lien originally filed as part of the state action in Madera County Superior Court.

Braun's instant motion for partial summary judgment was filed on July 22, 2005. Agri-System's opposition was filed on August 15, 2005. On August 22, 2005, Braun filed his reply brief and requested continuance in order to obtain the transcript of a deposition in support of the motion. On August 24, 2005, the court vacated the hearing date on Braun's

4

motion for partial summary judgment and took the matter under submission.  The transcript

that was the subject of Braun's motion to continue has since been received by the court.

## UNDISPUTED MATERIAL FACTS

1.    On or about March 29, 2000, Coast Grain and [Agri-Systems] entered into a written

contract, whereby [Agri-Systems] agreed to design, engineer and construct a steam

flaking facility and agricultural processing plant in the County of Madera.

Agri-Systems' Objections: Agri-Systems objects to the proffered fact on the grounds
the fact is irrelevant and the evidence offered is not authentic in that the exhibit
offered as evidence of the contract omits portions of the contract.  Braun admits the
proffered fact is not strictly relevant to the resolution of the issues before the court.

The court sustains Agri-Systems objection on the ground of relevance except to the
extent the proffered evidence indicates the existence of a contractual agreement
between the parties beginning on March 29, 2000.

2.    On or about August 21, 2001, [Agri-Systems] ceased work upon the Project and

recorded a mechanic's lien in the Madera County Recorder's Office, in the amount of

$1,030,000.00.

Agri-Systems' Objections: Agri-Systems contends the proffered fact is inadmissible
on the grounds of authentication, best evidence, and foundation.

The Lien is appended to the SACC and is a part of Agri-Systems' counterclaims in
this action.  The court agrees that Agri-Systems' objections are frivolous because the
authenticity of the Lien is part and parcel of Agri-Systems' counterclaims in this
action.  The objection is overruled.

3.    Coast Grain and [Agri-Systems] entered into a second written contract on or about

October 14, 2001, whereby [Agri-Systems] agreed to complete the project.

Agri-Systems' Objections: Agri-Systems objects to the proffered fact on the grounds
of authentication, hearsay, and best evidence.  Braun contends that the proffered fact
is not actually material to the issues presented here, the contractual relationship
between the parties is alleged by Agri-Systems in the State action.  The court further
notes that the contractual relationship between the parties is the basis for claims for
relief set forth in the SACC.

Agri-Systems objection to the proffered fact is sustained on the ground of relevance.

4.    Coast Grain and [Agri-Systems] subsequently discovered various defects in the work

performed by Defendant.  On or about November 27, 2002, [Greg Braun], then

Chapter 11 Trustee for Coast Grain in bankruptcy, filed the present action against [Agri-systems]. Plaintiff alleges herein, among other things, [Agri-Systems'] liability for the following defect-related claims: breach of contract; breach of expressed and implied warranties; negligence; and declaratory relief.

Agri-Systems' Objections: Agri-Systems objection to the proffered fact is basically a disputation as to the existence or extent of the alleged construction defects, which Agri-Systems vigorously disputes. Agri-Systems points out allegations contained in the complaint are not facts for purposes of summary judgment. Coast contends the allegations of the complaint are not offered for their truth, but only to show the existence of a dispute between the parties as to the existence and/or extent of the alleged construction defects.

Agri-Systems objection is overruled to the extent the proffered evidence is admissible not for the truth of the allegations set forth therein, but to show the existence of a dispute between the parties as to the existence or scope of alleged construction defects.

5.    Counsel for [Braun] subsequently took the deposition of Robert H. Hamlin, the president of [Agri-systems] and its purported Person Most Knowledgeable ("PMK") concerning the events herein.

Agri-Systems' Objections: Agri-Systems objects to the proffered undisputed material fact on the ground Robert H. Hamlin is not the PMK with respect to the accounting of costs included in the Lien. Agri-Systems contends the PMK for matters pertaining to the Lien is Janice Hamlin, not Robert Hamlin.

In their document titled "Re-Notice of Continued Deposition of Person Most Knowledgeable at Agri-Systems on for Production of Documents," Braun presents evidence that Robert Hamlin was the person produced by Agri-Systems as the PMK for "[i]nformation relating to any monies which Agri-Systems currently claims may be owed to it with regard to the Project." Doc. # 120, Exhibit "D" to Decl. Of Steven D. McGee at 4:9. Agri-Systems disputes the proffered fact, but offers no evidence that Janice Hamlin, not Robert Hamlin is the PMK with respect to the costs that are incorporated into the Lien. The court will therefore overrule Agri-Systems objection to the fact.

6.    One topic of Mr. Hamlin's deposition concerned the mechanic' lien and various charges comprising said lien. Mr. Hamlin stated under oath that counsel for Defendant prepared the mechanic's lien.

Agri-Systems' Objections: Agri-Systems objects to the proffered undisputed material fact on the grounds of relevance, authentication, vague and ambiguous and without foundation. Agri-Systems repeats their assertion that Janice Hamlin is the PMK with regard to charges included in the Lien.

The court finds the proffered undisputed fact is relevant to show the nature of the Lien; that is, that the sum reflected in the lien encompassed various charges, including charges that are alleged in this motion to have been improperly included. Agri-Systems objection with respect to authentication is without merit and is overruled. The objection on the ground of vague and ambiguous is also overruled because the proffered fact is not ambiguous with respect to the purpose for which the fact is offered. That is, the proffered fact is not ambiguous with respect to whether counsel for Defendant prepared the Lien or whether the amount of the Lien reflected a number of different charges. Agri-Systems objection on the ground the statement lacks foundation is also without merit and is overruled. The proffered undisputed material fact is therefore accepted.

7.     Mr. Hamlin also stated that the mechanic's lien amount comprised certain invoice amounts, along with "[s]ubsequent invoices for . . . demobilization, interest."

Agri-Systems' Objections: Agri-Systems vigorously contends the proffered undisputed material fact is in dispute as evidenced by the declarations of Janice Hamlin and David Vandiver. As will be discussed below, Braun's argument regarding the issue of whether interest charges or demobilization charges were improperly included in the Lien amount are legal arguments that do not turn on factual distinctions pertaining to either the interest charges or the nature of the demobilization charges. Because it makes no difference to the court's determination in this motion, the court will accept, *arguendo*, the fact the Lien included charges for interest and demobilization without making any determination as to the undisputed nature of the proffered fact.

The remainder of the undisputed material facts proffered by Coast follow the same pattern as the foregoing proffered fact number 7. That is, proffered facts 8, 9, 10, 11, and 12 are based either on deposition statements made Mr. Hamlin or on invoices that purport to show the mechanic's lien amount included, in part, charges for interest and demobilization. Each proffered fact is vigorously denied by Agri-Systems, citing deposition testimony of Janice Hamlin and David Vandiver to support their contention there exists a dispute as to each issue of material fact. The court will list each of the remaining of the undisputed material facts as proposed by Braun with the understanding each is disputed on the grounds previously mentioned. Again, because the court's decision does not rest on the proffered facts, the court will accept the proffered facts for the sake of the discussion that follows without making any determination whether the proffered facts are established as undisputed.

8.     Mr. Hamlin also revealed that the demobilization costs were included in the mechanic's lien amount, even though the demobilization did not occur until <u>after</u>

1    recordation of the mechanic's lien.

2    9.    Invoice No. CGC101401-B (part of Exhibit 1176, confirmed by Mr. Hamlin in his

3          November 1, 2003, deposition [and included at exhibit G to the Declaration of Steven

4          McGee]) lists a demobilization charge of $128,000.00.

5    10.   Invoice No. 38926 from Defendant (Exhibit 1162, confirmed by Mr. Hamlin in this

6          November1, 2003, deposition [and included at Exhibit H to the Declaration of Steven

7          McGee]) lists an interest charge of $71,827.00.

8    11.   Invoice No. CGC101401-A (the other part of the aforementioned exhibit 1176

9          [included as exhibit I to the declaration of Steven McGee]) lists interest charges

10         totaling $13,059.00.

11   12.   Finally, Invoice No. CGC020502A (produced by [Coast] by [Agri-Systems] from

12         Coast Grains's records in response to [Agri-Systems] requests for production of

13         documents) comprises and interest charge of $9,205.42.

## DISCUSSION

15         Braun's motion for partial summary judgment does not directly attack any of Agri-

16   Systems counterclaims against Coast. Rather, the motion seeks to reduce the amount of the

17   Lien by disallowing charges for unliquidated interest and for alleged demobilization charges.

18   **I.    Interest Charges on Unliquidated Debt**

19         There is no dispute between the parties as to Braun's underlying contention that a

20   Lien may not include charges for interest on unliquidated debt.  There is also no dispute that

21   the Lien contains interest on debt that accrued as the result of work performed under the

22   March Contract.  The dispute between the parties centers around the issue of whether Agri-

23   Systems' charges that were a result of work performed by them under the March Contract are

24   properly characterized as liquidated or unliquidated.  As the moving party, Braun has the

25   initial burden to show there is no material dispute as whether the interest charges reflected in

26   the Lien were, in fact, interest charges on unliquidated debts.  Braun contends the debt is

28                                                 8

unliquidated because the amount Agri-Systems is owed as a result of work performed under the March contract is subject to offset because of alleged performance deficiencies.

Agri-Systems offers two arguments in opposition. First, Agri-Systems contends the amount due under the March Contract became liquidated upon execution of the October Contract, which provided in pertinent part:

> Be it also known that the certain contract between Agri-Systems and Coast Grain Company dated 3-31-2000 has been cancelled and is no longer valid or in force except that any unpaid amounts are still due and payable with interest accruing on any unpaid balances at 12% per annum until paid.

Declaration of Steven McGee, included as Exhibit "C". Agri-Systems also contends Braun is estopped from asserting his position that the interest charges in the Lien reflect interest on unliquidated debt because Coast, in a previous bankruptcy proceeding, had characterized the debt owed Agri-Systems as liquidated, noncontingent, and undisputed. Agri-Systems' argument is not particularly helpful because it fails to address Braun's core contention that a debt is unliquidated because it is subject to offset. The court will therefore proceed to analyze Braun's contention without reference to Agri-System's argument.

The term "liquidated" has been used variously by courts, but in the context of bankruptcy and related actions, the common thread linking definitions has been "ready determination and precision in computation of the amount due." In re Sylvester, 19 B.R. 671, 679 (9th Cir. 1982). "'The definition of "ready determination" turns on the distinction between a simple hearing to determine the amount of a certain debt, and the extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability.' [Citation.]" Slack v. Wilshire Ins. Co., 187 F.3d 1070, 1073, 1074 (9th Cir. 1999). Under this definition, "debts of a contractual nature are generally liquidated" even though the amount may be disputed. In re Nicholes, 184 B.R. 82, 91 (9th Cir. 1995). "In other words, it is the *nature* of the dispute, and not the existence of the dispute, that makes a claim unliquidated." Id. at 90 (emphasis in original). While the court recognizes the case at bar does not rely on bankruptcy law for its determination, the court also recognizes the

9

case at bar arises within the larger context of Coast's bankruptcy proceedings.  The court therefore finds the foregoing definition of the term "liquidated" appropriate to this case.  Braun offers no alternative definition.

The key to Braun's argument is that the debt Coast owes to Agri-Systems is unliquidated because the sum Agri-Systems claims it is owed is subject to offset as a result of damages allegedly suffered by Coast as a result of Agri-Systems construction defects.  The crux of Braun's argument is that Coast's debt to Agi-Systems is unliquidated because the amount Coast will eventually owe can only be set with certainty after the court has made a determination of Coast's damages and offset those damages against Coast's debt to Agri-systems.  Ninth Circuit law does not support Braun's contention.

Such authority as the court has discovered clearly indicates a claim for offset does not render the underlying debt unliquidated.

> [A] dispute based upon a debtor's claim of an offset against a creditor is not in itself a dispute over debt liability or amount.  It is a dispute over the existence, validity, or amount of a second and independent debt raised and asserted as a offset in an attempt to reduce the amount of the first debt.  The assertion of a second debt as an offset will not render the first debt unliquidated because the offset claim creates no uncertainties with regard to the liability underlying the amount due upon the first debt.

In re Lambert, 43 B.R. 913, 921 (D. Utah 1984).  Courts have come to similar conclusions in the context of contract disputes, Bank One, N.A. v. A. Levet Properties Partnership, 2004 WL 1661204 *3-*4 (E.D. La. 2004), as well as in the context of determinations of liquidated debts to determine eligibility for relief under Chapter 13 of the Bankruptcy Code.  In re Sylvester, 19 B.R. 671, 672 (9th Cir. 1982) (fact a debtor may have counterclaims or defenses against a claimant does not affect the character of the debt as liquidated).  Braun has presented no authority for the proposition that, in the context of the facts of this case, the fact there are counterclaims and possible offsets to Coast's debt to Agri-Systems means that the debt is unliquidated.

The court finds the debt that arose under the March Contract is liquidated because it is

readily determinable under the terms of that contract.  The court further finds Braun's claims for offset do not render the debt unliquidated for the reasons discussed above.  Braun has failed to show there is no issue of material fact as to whether the interest charges on the debt owed under the March Contract were properly included in the Lien amount.  Partial summary judgment on that issue is therefore not warranted.  Since the court has determined Braun's core argument regarding offset is not legally persuasive, Braun's motion for partial summary judgment as to interest charges on the debt owed to Argi-Systems will be denied without resort to Agri-Systems' arguments with regard to sufficiency of the evidence or estoppel. The court therefore need not address those arguments.

## II. Demobilization Costs

Braun alleges the amount reflected in the Lien includes a charge of $128,000.00 for demobilization.  He contends that demobilization costs cannot be included in a mechanic's lien under California law because the costs do not reflect direct improvements on the property.  Braun contends that demobilization costs, which include those costs associated with idling and removing personnel and equipment from a work site after work has ceased, are in the nature of "consequential damages" or administrative costs that do not directly add value to the property or result directly in permanent improvement.  Such costs, Braun contends, may not be included in a Lien under California law.

Agri-Systems makes two arguments in opposition to Braun.  First, Agri-Systems alleges there remains a disputed issue of material fact as to whether the Lien includes demobilization charges.  Second, Agri-Systems alleges that even if the Lien does include charges for demobilization, such charges are properly included in the lien.  The court will address the second of these contentions first.

The statutory scheme that provides for mechanic's liens under California law is found

at Chapter 2 of the California Civil Code commencing with section[1] 3109.  The instant

motion implicates two issues that arise commonly in disputes involving mechanic's liens;

who is entitled to a mechanic's lien and what costs the lien may reflect.  With respect to who

is entitled to a mechanic's liens for improvements on property, section 3110 provides in

pertinent part:

> . . . all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials or appliances or leased equipment for the value of the use of such appliances, equipment, teams, or power whether done or furnished at the instance of the owner or of any person acting by his authority or under him as contractor or otherwise.

With respect to what amounts or charges may be included in the lien, section 3123(a)

provides that a lien under this chapter "shall be for the reasonable value of the labor, services,

equipment, or materials furnished or for the price agreed upon by the claimant and the person

with whom he or she contracted, whichever is less."  Where a lien seeks to secure

compensation for costs that arise as the result of the rescission, abandonment or breach of a

contract, subsection (b) of section 3123 provides "the amount of the lien may not exceed the

reasonable value of the labor, services, equipment, and materials furnished by the claimant."

In <u>Primo Team, Inc. v. Blake Const. Co., Inc.</u>, 3 Cal.App.4th 801 (4th Dist. 1992), the

court addressed the scope of persons who are entitled to a mechanic's lien to secure debts on

construction projects.  In <u>Primo</u>, a company that assembled a workforce for a contractor,

advanced payroll funds, and provided training, recruitment and accounting services necessary

to pay the employees appealed the denial of its attempt to assert claims against payment

bonds issued for such public works projects.  <u>Id</u> at 703.  The court held the claimant was not

an employer of the workers they recruited and trained and was not a provider of labor or

---

[1]    References to section numbers hereinafter refer to sections of the California Civil Code, unless otherwise specified.

services to the property being improved, but was rather a provider of services to the contractor who, in turn, provided labor to the project. Id. at 807-808. The court concluded that section 3110 permits claims only by those who provide the "primary thing necessary" to the work, and does not include those "who only enable others to carry on the work." Id. at 812. Among the examples of classifications of persons who are not included as potential claimants under section 3110, the Primo court included attorneys, lenders, secretaries, dispatchers and yard mechanics whose efforts, while possibly essential to the project, "do not of themselves add value to the property." Id. at 811.

     In a similar vein, the court in Lambert v. Superior Court (MacEwen), 228 Cal.App3d 383 (1st Dist. 1991), interpreted the scope of costs that may properly be included in a mechanic's lien pursuant to section 3123. The Lambert court held that:

> . . . Civil Code section 3123 does not permit a lien for delay damages, whether or not the contract describes them as extra work. The function of the mechanic's lien is to secure reimbursement for services and materials actually contributed to a construction site, not to facilitate recovery of consequential damages or to provide a claimant with leverage for imposing the claimant's view of who caused the breakdown in the contract.

Id. at 389.

     Braun's contention that costs that do not directly benefit the project or add value to the project may not be included in a mechanic's lien is amply supported by California case law. However, Braun's attempt to establish that demobilization costs fall in the category of costs that do not directly benefit a project stands on much shakier ground. In support of his contention, Braun offers the following definition of demobilization: "Costs and charges of demobilization include 'idle equipment until such equipment can be removed from the project and demobilization costs, plus project superintendent, foreman, and other managerial costs to oversee the demobilization." Doc. # 117 at 8. The circularity of the definition is obvious. According to this definition, costs and charges of demobilization consist, at least in part, of demobilization costs. The definition does little to resolve whether the costs of demobilization are of a nature that may be included in a mechanic's lien. Braun's attempt to

characterize demobilization costs as a species of consequential damages is utterly without support.

As Braun acknowledges, there is no case authority that directly addresses the issue of whether demobilization charges may be included in a mechanic's lien.  The court has reviewed relevant case law to find a useful definition of the term "demobilization" as that term is applied to the construction trades and has found none.  Rather, what the court has found where the word is mentioned in the context of construction projects is simply the inference that it has something to do with removing from the work site those articles of material or equipment that are not intended to be a permanent part of the work project.

Any doubt with regards to the interpretation of the statutes pertaining to mechanic's liens "should be resolved in favor of the lien claimant."  Schmitt v. Tri Counties Bank, 70 Cal.App.4th 1234, 1242 (3rd Dist. 1999).  The court therefore presumes a wide range of activities may fall within the category of demobilization costs.  In the absence of authority to the contrary, the court concludes that "demobilization" is a term of art in the construction industry that refers to those costs that are associated with the removal of equipment and material that are not destined to be a part of the completed work project.

Applying this broad view of demobilization and its associated costs to the accepted rule that a mechanic's lien may not contain any costs that do not directly benefit or add value to the property, the court cannot conclude as a matter of law that demobilization costs are categorically excluded from mechanic's liens.  For example, if an extensive scaffolding belonging to a contractor is erected as a part of a construction project, the dismantling of that scaffolding after the conclusion of construction work could be categorized as a demobilization cost under the foregoing definition.  Yet the removal of the scaffolding may be absolutely necessary for the project to function as intended.  Thus the removal of the scaffolding is the final step in the enhancement of the value of the project.  Without the removal, the project is incomplete and does not achieve its full value.  Stated another way,

14

1   demobilization may include, at least in part, the costs of those final steps that are absolutely

2   integral to the full realization of the full value of the project and that are normally integrated

3   into overall project costs.  Such costs go directly to the value of the property and would

4   therefore not be categorically excluded from mechanic's liens.

5          Braun's motion for partial summary judgment with respect to the inclusion of charges

6   for demobilization in the Lien consists only of the legal argument that demobilization charges

7   as a category cannot be included in a mechanic's lien.  The court rejects that argument.  In

8   making this determination, the court makes no determination on the issue of whether some

9   portions or all of the invoice amounts categorized as demobilization costs might be excluded

10  from the Lien amount on factual bases.  Braun has alleged certain facts concerning the

11  demobilization costs allegedly incorporated in the Lien amount - that the expenses were

12  actually incurred <u>after</u> the Lien was filed and that the expenses consisted only of moving

13  cranes a short distance and not removing them to Montana - but has made no arguments

14  concerning whether the costs should be excluded from the Lien amount based on those

15  factual circumstances.  Likewise, Braun has not argued that the alleged demobilization costs

16  are in the nature of delay damages that might be excluded under <u>Lambert</u>.  The court will not

17  decide the validity of arguments the parties have decided not to make based on facts the

18  parties have not fully developed.

19         Braun correctly notes that in order to successfully foreclose on the Lien, Agri-Systems

20  will have the burden to establish the validity of the Lien, including the validity of all charges.

21  See <u>Basic Modular Facilities, Inc. v. Ehsanipour</u>, 70 Cal.App.4th 1480, 1485 (1st Dist. 1999)

22  (actual amount due on a lien presents a question of fact for the trial court).  However, in the

23  context of the instant motion for partial summary judgment, Braun has the burden of initially

24  establishing the absence of any issue of material fact as to the excludible nature of the

25  demobilization charges.  The court concludes Braun has failed to carry this burden because

26  Braun's core argument that <u>all</u> charges for demobilization are non-lienable as a matter of law

27

28                                          15

is not persuasive.  Partial summary judgment is therefore not warranted.

Braun has also moved in the alternative to extinguish the Lien altogether on the ground Agri-Systems willfully included charges for interest and demobilization that Agri-Systems knew or should have known could not lawfully be included.  Since the court has rejected Braun's arguments that interest charges and demobilization charges must be categorically excluded from the Lien as a matter of law, and because Braun has not offered sufficient argument that any particular charges should be excluded from the Lien on the basis of factual circumstances, grounds are lacking to grant Braun's request to extinguish the Lien.


In view of the foregoing discussion, Braun's motion for partial summary judgment is hereby DENIED in its entirety.


IT IS SO ORDERED.

**Dated:    December 8, 2005**          _____**/s/ Anthony W. Ishii**_____
0m8i78                                          UNITED STATES DISTRICT JUDGE

16