IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG BRAUN, | CASE NO. CV-F-02-6482 AWI LJO |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO COMPEL AND FOR DISCOVERY SANCTIONS** (Doc 202) |
| vs. | |
| AGRI-SYSTEMS, | |
| Defendant. | |

Pursuant to a notice filed on December 8, 2005, Defendant Agri-Systems seeks to compel further production of documents from plaintiff Greg Braun and seeks monetary sanctions. Plaintiff Greg Braun, as Plan Agent for Coast Grain Company, and Agri-Systems filed a joint statement of discovery disagreement on January 13, 2006. Supplemental evidence was filed by the parties on January 16, 2006 through January 18, 2006, January 20, 2006 and January 26, 2006. The matter came on regularly for hearing on January 31, 2006 in Department 8 of the above-entitled court. Greg Braun appeared by counsel Steven McGee and Amanda Glenn of Kimble, MacMichael & Upton. Defendant Agri-Systems appeared by counsel Henry Nunez, Law Offices of Henry Nunez and by Jon Doak, Doak & Associates. Having considered the joint statement and all of the evidence filed on behalf of the parties, as well as the arguments of counsel and the Court's file, the Court issues the following order.

### FACTUAL AND PROCEDURAL BACKGROUND

**Factual Overview**

Coast Grain was in the business of operating grain mill facilities in California. After an involuntary bankruptcy was filed on its behalf, Coast Grain's plan was confirmed on October 9, 2003.

1

Plaintiff Greg Braun is the plan Agent and pursues this action on behalf of Coast Grain. Agri-Systems was in the business of designing and constructing grain mill facilities. Agreements were entered into between Coast Grain and Agri-Systems under which Agri-Systems was to design, engineer and construct a grain mill facility, including the construction of a fast rail receiving and steam flaking system, on property owned by Coast Grain on Avenue 12 in Madera ("project"). By this lawsuit, Coast Grain (through plaintiff) seeks to recover damages it claims to have suffered as a result of alleged acts, omissions and breaches of Agri-Systems. Agri-Systems denies any further responsibility to Coast Grain and alleges that Agri-Systems has been damaged by virtue of nonpayment of contractual obligations.

Plaintiff alleges six claims for relief:

1. First claim - Breach of contract for failing to complete the project timely, not obtaining appropriate government approvals, not completing the work according to the plans, overbilling, etc.
2. Second claim - Breach of Express warranty
3. Third claim - Breach of Implied warranty
4. Fourth claim - Negligence
5. Fifth Claim - Breach of Confidentiality Agreement
6. Sixth claim - Declaratory relief.

Discovery cut off was January 9, 2006. Expert discovery cut off is February 17, 2006. The pretrial conference is set for April 19, 2006 and trial is set for June 6, 2006 before the Hon. Anthony W. Ishii.

**SCOPE OF MOTION FOR PRODUCTION OF DOCUMENTS**

The motion involves Agri-Systems Third request for production of document served in July 2005. Defendant asks for the following remedies:

**(A) Further document production:** Defendant asks for the documents to be produced from these document requests at issue:

(1) Request no. 6 and 7 - all communications, reports and other documents from 1/1/02 by and between plaintiff and brokers McCarthy and Co. ("the McCarthy Documents") regarding the Madera Project and the sale of the property. (McCarthy was the broker retained by plaintiff to sell the project.)

(2) Request no. 8, 9 and 10 - all communications reports and other documents from 3/1/02 and June 2003 between plaintiff and prospective purchasers of the Madera property, including Pacific Ethanol and the Pacific Ethanol sale documents. (Pacific Ethanol ultimately purchased the property)

(3) Request no. 11 - all documents regarding the condition of the Madera Project.

(4) Request no. 13 - all documents regarding settlements between March 2002 and January 2005 brought by plaintiff against third party contractors, materialmen or suppliers who performed work on the project.

(5) Request no. 14 - all communications, reports and other documents from plaintiff and members of the unsecured creditors' committee appointed in the Coast Grain bankruptcy during 10/17/01 and October 2003 re Agri-Systems, the Madera property or the sale of the property.

(6) Request no. 15 - all documents regarding attorneys' and expert witness fees and costs claimant by plaintiff as damages.

**(B) Index of digital documents:** Compel plaintiff to produce indexes, lists or other serial description of documents produced in a digital format.

**( C) Privilege Log**: if responsive documents in plaintiff's possession and control are subject to a privilege, plaintiff should be compelled to list and describe the privilege.

**(D) Request for attorney's fees:** defendant should be reimbursed for its fees and costs.

## ANALYSIS & DISCUSSION

### Scope Of Discovery

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 987 (1958), and to narrow and clarify the issues in dispute, *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947).

F.R.Civ.P. 26(b)(1) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

1    "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (parties opposing discovery are required to carry a heavy burden to show why discovery should be denied).

### Standards for Document Production

F.R.Civ.P. 34(b) requires a written response to a request for production to "state, with respect to each item or category, that <u>inspection and related activities will be permitted</u> as requested, unless the request is objected to, in which event the reasons for the objection shall be stated." (Emphasis added.) A party is obliged to produce all specified relevant and nonprivileged documents or other things which are in its "possession, custody or control." F.R.Civ.P. 34(a); *Norman Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co.*, 576 F.Supp. 511, 512 (W.D. Pa. 1983). "A party who produces documents <u>for inspection</u> shall produce them as they are <u>kept in the usual course of business</u> or shall organize and label them to correspond with the categories in the request." Rule 34(b) (emphasis added).

Motions to compel for failure to comply with Rule 34 are authorized by Rule 37 of the Federal Rules of Civil Procedure: "[If] a party, in response to a request for inspection submitted under Rule 34, <u>fails to respond that inspection will be permitted</u> as requested or <u>fails to permit inspection as requested</u>, the discovering party may move for an order compelling an answer, or a designation, or an <u>order compelling inspection</u> in accordance with the request." (Emphasis added.)

### Inspection of the Documents

According to plaintiff, the documents are physically located in three locations: (1) San Francisco - at the document retention firm, O'Connell and Assoc., (2) Fresno - at counsel's office in which copies of the construction file are retained in approximately nine (9) boxes, and (3) Ontario, California, where Coast Grain had offices.

Braun argues, and Agri-Systems does not dispute, that Braun offered to make the documents in San Francisco, Fresno and Ontario available for inspection by Agri-Systems. Braun argues that Agri-Systems never contacted Braun about arranging a date for the document inspection of the San Francisco

4

or Ontario documents. Agri-Systems only inspected the 9 boxes that are located in Fresno. These boxes were at Kimble, MacMichael and Upton and were substantially all of the documents that counsel for Braun believed related to the project. There is no objection from Agri-Systems as to the "location" of the documents; no argument from Agri-Systems that the documents were moved to a "distant" location or moved from where they were originally maintained. **Agri-Systems did not inspect the remainder of the documents.**

At oral argument, Agri-Systems argued that it was not told that the original documents were in San Francisco or Ontario and that representation was made that true and correct copies of <u>all</u> of the documents were at Kimble, MacMichael's office. Also at oral argument, counsel acknowledged that after the document inspection of the 9 boxes at the Kimble, MacMichael office, counsel became aware that not all of the requested documents were at the Kimble, MacMichael office.

As early as June 30, 2005, in its response to another request for production of documents, Braun suggested that arrangements be made to inspect the documents. (Exh. B to McGee Decl.; Exh. 3 to Nunez Decl.) On August 15, 2005, when Braun responded to the Third set of requests for production of documents, he identified the three addresses where the documents are located. (Exh. J to McGee Decl.) At the Braun deposition on August 15, 2005, Braun testified that digitized documents were retained at the O'Connell document retention firm in San Francisco. This information was confirmed in a letter from plaintiff's counsel on August 16, 2005. (Exh. C to McGee Decl.) Rule 34 only requires that the "response shall state, with respect to each item or category, that inspection and related activities <u>will be permitted</u> as requested" and does not require Braun to contemporaneously produce the actual documents. Therefore, Agri-Systems was informed that the documents were located in various places, but inspected only one location. Had it inspected the other locations, this motion may have been unnecessary.

### Documents Produced Voluntarily

At oral argument, the parties disputed a continued trickling stream of documents being produced by Braun. This was a major source of contention between the parties because the "production" was incomplete and delayed. Braun has produced some documents at various times following its response to the document request on August 16, 2005. For instance, on October 5, 2005, Braun physically

5

produced discs containing documents the parties refer to as the "McCarthy documents," along with a privilege log. In another example, the discs of documents from the inspection of the 9 boxes were produced on October 4, 2005. Then, plaintiff demanded they be returned, due to inadvertent disclosure of attorney client documents, and replacements were not provided until November 4, 2005. Other documents continued to dribble in, such as photographs. Plaintiff also produced two different indexes which had been generated by the document retention firm, O'Connell. On November 7, 2005, a 112 page index was produced - it listed the boxes of original Coast Grain documents and included a general description of the document in the boxes.[1] A second index was a 7 page index which listed the documents that had been produced by or obtained from third parties. In addition, Braun recently "discovered" escrow documents in its co-counsel's off-site storage, which would be responsive to the document requests.

At oral argument, plaintiff's counsel said that when defendant identified specific documents they wanted, plaintiff would try to accommodate defendant. At oral argument, plaintiff's counsel represented this piecemeal production was of documents maintained at the document retention firm in San Francisco and which were available for inspection by defendant. Counsel originally stated that plaintiff had a legal obligation to give defendant these documents. Later, counsel clarified that plaintiff only had the duty to make the documents available for inspection, which plaintiff did.

The Court agrees that Rule 34 does not require a contemporaneous production of documents. The duty imposed by Rule 34 on a responding party is to permit the inspection of documents. Rule 34(a) ("to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents . . ."). Plaintiff did so. Plaintiff offered the documents for inspection in San Francisco and Ontario. Agri-Systems was on notice the documents were maintained at these locations, but did not inspect the documents. The dispute in this motion centers on the inadequate "trickle of documents" plaintiff voluntarily copied and sent to plaintiff. This was a duty not imposed by Rule 34. Although plaintiff undertook to voluntarily produce documents, even in a haphazard and much less than thorough fashion, this Court cannot expand the duty under Rule 34 and

---

[1] The index is of the <u>boxes</u> not the <u>documents</u>.

force Braun to comply with a duty he now has expanded.

Braun points out that the date for discovery cut-off has passed and therefore Agri-Systems has waived its right to inspect the documents in San Francisco and Ontario. The Court agrees, with the exceptions noted below.

### Request for Index of Documents or Lists

Agri-Systems requests an Index of documents or List of documents. Braun produced, as the parties agreed, digitized documents from Agri-Systems' inspection of the 9 boxes of documents - some 10,000 pages. Agri-Systems wants an index of those documents.

An index, whether of documents produced or those in existence (i.e, San Francisco or Ontario), is not required under Rule 34. "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Rule 34(b).

Braun argues, and it is uncontroverted, that Braun/Coast Grain does not maintain a "index" of documents in its normal course of business. Rule 34 does not require a party to create such an index.

At oral argument, Agri-Systems also argued that an index of <u>all</u> of the documents was created by the O'Connell document retention firm and should be produced. Agri-Systems argues that the index was created for the purpose of operating in the normal course of business for Braun as the Plan Agent.

Braun argues that the index of documents created by O'Connell is attorney work product because it was created for the purpose of litigation and in anticipation of litigation.

To be protected by the work product, the documents or things must have been prepared in anticipation of litigation or trial. Work product protection applies to "documents and tangible things prepared in anticipation of litigation or for trial" by or on behalf of a party. F.R.Civ.P. 26(b)(3). The "work product" doctrine protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. F.R.Civ.P. 26(b)(3); *see Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393-394 (1947). Work product protection is designed to preserve the privacy of attorneys' thought processes, and to prevent parties from "borrowing the wits of their adversaries." *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 576 (9th Cir. 1992). Work product protection may be waived by disclosure or other conduct, such as

testimonial use of the materials. *United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 2170-2171 (1975).

Documents may fall within the ambit of the work product doctrine where 'their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.' *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 908-909 (9th Cir. 2003) (environmental clean-up documents created by attorney's consultant in response to administrative agency request were protected from discovery in grand jury proceedings commenced against client relating to same pollution). The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the document's preparation must also be considered. "[T]he nature of the document and the factual situation of the particular case" are key to a determination of whether work product protection applies. *Id.*

The Court is convinced that the overall document index created by the O'Connell firm was created for and in anticipation of litigation. The parties acknowledge that several hundred other adversary proceedings and other litigations are pending related to this bankruptcy estate. Even if the index has some purpose of "operation in the normal course of business," the Court finds that the litigation purpose so permeates the index that it must be considered privileged.

**Photographs**

Defendant argues that photographs of the Madera Facility taken by David Van Diver between mid September 2001 and January 2002 have not been produced. Defendant argues that plaintiff produced a disc of photographs, which plaintiff describes as some 1,500 pictures, but that there are critical gaps of pictures. At oral argument, defendant argued that these gaps were intentional on the part of plaintiff's counsel. At oral argument, plaintiff denied any such intentional gap, reiterating that all photographs have been produced and that none have been removed. Counsel agreed that the discs could be inspected and a comparison made. Defendant acknowledged that it desired to confirm that the photographs on the original disc were accurately provided.

Defense counsel has accused plaintiff's counsel of intentional wrongful conduct, a serious accusation by an officer of the Court. The Court will permit defendant to examine the discs containing

1  the photographs, by way of appropriate expert only, to determine whether the discs have been tampered.
2  The process of arranging for the inspection of the discs must be in progress within 10 days and
3  accomplished within 40 days. This Court is to be notified, in writing, of the result. The Court wishes
4  notice to enable it to determine the presence or absence of merit of counsel's serious accusation.

### Braun has agreed to produce the following documents

Plaintiff acknowledges that two categories of documents have not been produced and which should be produced: (1) documents on Mr. Braun's hard drive computer - it crashed and has been sent to service to recover the data - if recovery is successful, the unprivileged documents will be produced and a privilege log will be produced for documents which are not produced. (2) The second category is escrow documents, which are in the process of being bate stamped, redacted and a privilege log created. These documents were recently discovered in co-counsel's offsite storage. These documents will be ordered produced within 20 days of the date of service of this order. Within this same time frame, plaintiff shall report to defense counsel on the status of recovery efforts for Braun's computer hard drive.

### Adversary Proceedings

At oral argument, plaintiff indicated that he would be producing documents related to adversary proceedings/litigation identified in defendant's Request no. 13. The document request was specific and the representation was that the documents would not be located at the document retention firm. Accordingly, the documents will be ordered produced within 20 days of the date of service of this order.

### Privilege Log

In request no. 14, defendant asked for all communications reports and other documents from plaintiff and members of the unsecured creditors' committee appointed in the Coast Grain bankruptcy regarding the Madera property.

Braun claimed a privilege but did not provide a privileged log of the documents or categories of documents he contends are privileged. Braun cites *Kaiser Steel Corp v. Frates,* 84 B.R. 202 (Bktcy d. Colo 1988) which held that reports prepared by accounting firm for unsecured creditors' committee to use in evaluating merits of litigation were exempt from discovery. However, in *Kaiser Steel,* the 3rd party provided a schedule of privileged documents and also submitted the schedule to the court for an

*in camera* inspection. Here, a privilege log has not been provided. Accordingly, plaintiff must submit a privilege log within 20 days of the date of service of this order.

### Attorney and Expert Fees

Agri-Systems asked for all document regarding attorneys' and expert witness fees and costs claimant by plaintiff as damages. Braun objected to the production of billing statements as attorney client privilege.

Not all communications between attorney and client are privileged. The Ninth Circuit has recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. *Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege. *Clarke v. American Commerce Nat. Bank*, 974 F.2d at 129. In *Clarke*, the court concluded that the billing records were discoverable because of the general nature of the information provided therein, e.g., information on the identity of the client, the case name for which payment was made, and the amount of the fee. *Id.* at 130. The attorney's bills in *Clarke* contained "nothing [that] ... reveal[ed] specific research or litigation strategy which would be entitled to protection from disclosure." *Id.* at 130.

Here, plaintiff argues that the bills cover a four year period of representation and contain specific information about strategies and trial preparation, including issues researched, analyzed, documents reviewed and prepared. Plaintiff argues that over the four year representation, the bills show a shift of strategies and focus of representation.

Without viewing the documents reflecting attorneys' fees, the Court cannot determine whether the documents fall within the exception carved out by *Clarke v. American Commerce Nat. Bank* or whether the documents are attorney client privileged. Accordingly, the Court orders that the documents reflecting attorneys' fees are to be submitted to Department 8 of this Court within 15 days of the date of this order, for an *in camera* inspection.

/////

1  Plaintiff agrees to produce a summary of its expert witness fees. The Court will order that these
2  be produced within 20 days of the date of service of this order.

### SANCTIONS

Courts generally consider the reasons for the failure to properly respond to discovery requests and reserve the harshest sanctions only for flagrant violations of discovery rules. *Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 185 (E.D.Cal.,1991).

The request for sanctions will be denied for the above reasons, but sanctions may be noticed by either party and reconsidered by the Court based on the results of the expert photo analysis.

### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part, defendant's motion to compel as follows:

1. DENIES the motion to compel further production/inspection of documents located in San Francisco or Ontario, except as noted specifically in the body of this order.
2. DENIES the request for an Index or List of documents.
3. GRANTS the request for a comparison of discs containing photographs of the project, subject to the limitations noted in the body of this order.
4. GRANTS the request for further production of documents from Braun's computer hard drive and the escrow documents, as described in the body of this order.
5. GRANTS the request for documents described in Request no. 13.
6. GRANTS the request for a privilege log of documents responsive to Request no. 14.
7. GRANTS the request for production of a summary of expert fees.
8. ORDERS that documents be submitted for an *in camera* inspection, as described in the body of this order.
9. DENIES the request for sanctions.

IT IS SO ORDERED.

**Dated:   February 1, 2006**               /s/ Lawrence J. O'Neill
b9ed48                                      UNITED STATES MAGISTRATE JUDGE