1
2
3
4
5
6
7                    **IN THE UNITED STATES DISTRICT COURT**

8                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   GREG BRAUN,                              CASE NO. CV-F-02-6482 AWI LJO

11              Plaintiff,                    **ORDER ON PLAINTIFF'S MOTION FOR**
                                             **SANCTIONS OF REVOCATION OF PRO**
12       vs.                                  **HAC VICE STATUS AND MONETARY**
                                             **SANCTIONS** (Doc. 285)
13   AGRI-SYSTEMS,

14              Defendant.
     _____/
15

16          By notice on March 15, 2006, Plaintiff Greg Braun seeks monetary sanctions against defendant

17   Agri-Systems and its counsel Jon Doak and termination of Mr. Doak's pro hac vice status. Plaintiff seeks

18   monetary sanctions in the amount of over $17,000 for false accusation that counsel Steven McGee

19   tampered with evidence.  Defendant and counsel filed an opposition on March 31, 2006.  Plaintiff filed

20   a reply on April 21, 2006.  Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings

21   without oral argument.  Having considered the moving, opposition, and reply papers, as well as the

22   Court's file, the Court issues the following order.

23                    **FACTUAL AND PROCEDURAL BACKGROUND**

24          Coast Grain was in the business of operating grain mill facilities in California.   It filed

25   bankruptcy and its plan was confirmed on October 9, 2003.  Plaintiff Greg Braun is the plan Agent and

26   pursues this action on behalf of Coast Grain. Agri-Systems was in the business of designing and

27   constructing grain mill facilities. Agreements were entered into between Coast Grain and Agri-Systems

28   under which Agri-Systems was to design, engineer and construct a grain mill facility, including the

                                             1

construction of a fast rail receiving and steam flaking system, on property owned by Coast Grain on

Avenue 12 in Madera ("project").  By this lawsuit, Coast Grain (through plaintiff) seeks to recover

damages it claims to have suffered as a result of alleged acts, omissions and breaches of Agri-Systems.

Agri-Systems denies any further responsibility to Coast Grain and alleges that Agri-Systems has been

damaged by virtue of nonpayment of contractual obligations.

**Agri-Systems' Motion to Compel**

_____  On December 8, 2005, Defendant Agri-Systems moved to compel further production of

documents and to compel production of photographs of the construction project (commonly referred to

by the parties as the "Vandiver photographs").  The motion came on for hearing on January 31, 2006.

At the hearing, defendant contended that not all of the photographs had been produced.  The Court

inquired whether the parties and met and conferred and Mr. Doak reported that plaintiff stated that he

does not have any other photographs.  The Court's inquiry continued:

> The Court: "Well, that's exactly why I am asking the questions.  If the answer is under oath we don't have them, what can I do? Unless there is an indiction that someone is lying."

> Mr. Doak: "That's precisely the point, Your Honor.  There is an indication that someone is lying . . ."

> The Court: "Who?"

> Mr. Doak: "Plaintiff's counsel."

> The Court: "You think that Plaintiff's counsel has them and you think he's lying and saying I don't have them?"

> Mr. Doak: "I think that is exactly correct."  (Doc. 279, p. 65.)

Further in the hearing, Mr. Doak stated:

> Mr. Doak: "The photographs that predate September 7 of 2001 appear to have been edited.  They are not – they've been renumbered on the disks that were provided, but they appear to have been edited to remove photographs." (Doc. 279, p.66.)

Following the oral argument, the Court issued an Order which states as to the photographs:

> "Defendant argues that photographs of the Madera Facility taken by David Van Diver between mid September 2001 and January 2002 have not been produced.  Defendant argues that plaintiff produced a disc of photographs, which plaintiff describes as some 1,500 pictures, but that there are critical gaps of pictures.  At oral argument, defendant argued

1   that these gaps were intentional on the part of plaintiff's counsel.  At oral
2   argument, plaintiff denied any such intentional gap, reiterating that all
    photographs have been produced and that none have been removed.
3   Counsel agreed that the discs could be inspected and a comparison made.
    Defendant acknowledged that it desired to confirm that the photographs
    on the original disc were accurately provided.
4

5   "Defense counsel has accused plaintiff's counsel of intentional wrongful
    conduct, a serious accusation by an officer of the Court.  The Court will
6   permit defendant to examine the discs containing the photographs, by
    way of appropriate expert only, to determine whether the discs have been
7   tampered.  The process of arranging for the inspection of the discs must
    be in progress within 10 days and accomplished within 40 days.  This
8   Court is to be notified, in writing, of the result.  The Court wishes notice
    to enable it to determine the presence or absence of merit of counsel's
9   serious accusation."  (Doc. 252, Order filed Feb. 2, 2006, p. 8-9.)

10  Following this order, plaintiff sought a protective order precluding defendant from taking depositions

11  of persons most knowledgeable at plaintiff's document retention firms which handled the Vandiver

12  photographs.  The Court precluded the depositions, noting the expiration of discovery, and concluding

13  that the issue was "narrow" and that it was not "discovery as usual."  However, the Court noted an

14  inconsistency:

15  "At the March 6, 2006 telephonic hearing, plaintiff's counsel represented
    that he had turned over all photographs to defendants, which is the same
16  statement he made at the prior discovery hearing on January 31, 2006.  At
    that prior hearing and in response to a question of the Court, plaintiff's
17  counsel said that plaintiff had provided all photographs to defendants.
    This statement turned out to be inaccurate because subsequently
18  additional photographs were provided to defendants.  Accordingly, in that
    there appears to be a failure in diligence of search, the Court addresses
19  this issue."  (Doc 278, filed March 10, 2003, p.20.)

20  The Court then directed plaintiff's counsel to provide a declaration of due diligence in the search for the

21  photographs.  Counsel filed the declaration on March 14, 2006.  (Doc. 284.)  The issue was the scope

22  of the search performed for the 200-300 floppy discs that Vandiver testified contained the photographs

23  he had taken during the construction project.  The declaration states the counsel went to the O'Connell

24  document handling site and looked for the 200-300 floppy discs and asked O'Connell if he had seen such

25  discs.  Coast Grain documents are contained in 1,300 boxes and O'Connell has gone through the boxes

26  at one time or another and had never seen 200-300 floppy discs.  No one has seen 200-300 discs.

27      On March 15, 2006, plaintiff filed the instant motion.

28  /////

3

1  **Overview of Plaintiff's Position**

2      The sanctions request arises from Jon Doak's accusation at the January 31, 2006 hearing that

3  plaintiff's counsel edited computer disks to remove photographs.  The Court acknowledged the severity

4  of this accusation in its order following the motion.  Contrary to what the Court allowed, Agri-Systems

5  never inspected the discs.  Plaintiff, however, retained an expert, Kevin Fagalde of Digital Mountain,

6  Inc., who determined the original Vandiver Cd-R did not have any filed removed, destroyed or altered

7  from it.  He determined that the disc is not rewriteable and thus Mr. McGee could not have removed or

8  altered the data.  Plaintiff argues that Mr. Doak acted in an unethical, unlawyerlike and unprofessional

9  manner in accusing opposing counsel of evidence tampering.

10  **Overview of Agri-Systems' Position**

11      Agri-Systems argues that it has been engaged in a year long search for photographs in plaintiff's

12  possession, custody or control that show the work performed by Agri-Systems. David Vandiver, the

13  former Coast Grain project manager, testified three separate times that he took photos of significant

14  events, including, the concrete slip forming.  Vandiver testified that he left some 200-300 floppy discs

15  at Coast Grain. Agri-Systems provides various passages from Vandiver's testimony related to his taking

16  of the photographs. Agri-Systems goes through specific inconsistences in various declarations submitted

17  by Braun regarding the photographs. (Opposition p.11-14.)  Agri-Systems' suspicion, that plaintiff had

18  failed to provide copies of *all* of the Madera project photos taken by Vandiver, was confirmed when

19  plaintiff provided additional, unseen photos on January 26, 2006, just prior to the motion to compel.

20  Mr. Doak argues that plaintiff's post-hearing declarations do not prove the Mr. Doak's responses to the

21  Court's questions were false or recklessly made.  Agri-Systems argues that post-hoc penalization of

22  Agri-Systems or its counsel, Mr. Doak, for candor-precisely what Plaintiffs counsel are attempting now-

23  is prohibited by California law.

24                      **ANALYSIS AND DISCUSSION**

25  **Prejudice from Pro Hac Vice Revocation**

26      Plaintiff requests a sanction of revoking counsel Jon Doak's pro hac vice status.  The primary

27  issue for the Court is the prejudice to Agri-Systems of having its main counsel barred from defending

28  the suit in California, at this late date.  Agri-Systems does not specifically argue the "prejudice" from

4

1   removal of Mr. Doak as main attorney, although it argues it will be denied "due process."  Discovery

2   cut off has passed, the pretrial conference was conducted on April 19, 2006 and trial is set for June 7,

3   2006.

4        Mr. Doak was appointed counsel in this case in May 2005.  He has represented to the Court that

5   he is long time counsel for Agri-Systems in Montana and is representing Agri-Systems in its Montana

6   Bankruptcy.   The Court is aware from its involvement in the discovery and scheduling, that Mr. Doak

7   has taken the lead in the case over that of Henry Nunez. As has been presented to the Court, much of the

8   discovery in this case has occurred in the last year, under his tenure.  Thus, Mr. Doak is both familiar

9   with Agri-Systems business operations and the litigation strategy in this case.  Attorney Mark Parker was

10   recently added to the case, but the Court does not have any representation that he is taking over the lead

11   position.

12        In addition, the Court will suffer prejudice from Mr. Doak's removal in that the trial date will

13   undoubtedly have to be moved, the delay will ensue more law and motion related to rescheduling,

14   possibly reopening discovery and other related issues.

15        At this late date, the Court cannot ignore the prejudice to Agri-Systems, or to the Court, from

16   removal of Mr. Doak, which would be too extreme a measure as redress for the specific conduct

17   challenged by Braun.  Therefore, the request to revoke Mr. Doak's pro hac vice status is denied.

18   **Any Justification for Mr. Doak's Conduct?**

19        Was there any justification for Mr. Doak's accusation that plaintiff's counsel tampered with the

20   evidence?

21        Agri-systems argues it has engaged in a quest to locate the photographs and argues Mr. Doak was

22   justified in skepticism whether Agri-Systems received all of the documents requested.  Specifically as

23   to the photographs, all the photos have not been produced as established by:

24        1.    David Vandiver's various testimonies as to (a) the number of floppy discs, and (2) the

25               subject of the photos, e.g. "Rebar photos."

26        2.    Matt Hamlin's testimony that he saw David Vandiver taking photos, and he has not seen

27               photos of some of the things he remembers Vandiver taking photos, such as the rebar.

28        3.    Braun does not dispute that there may be other photos, but says that they cannot locate

1    more.

2    4.    Mr. Doak said that he received from plaintiff in July 2005, a disc with photos, then

3          received a replacement disc in September 2005, but the replacement disc had some new

4          photos which were not on the original disc.

5    Assuming that there were 200-300 floppy discs, as the evidence indicates, they seemed to have

6    disappeared.  Coast Grain has inferred that it took all documents from its operations and sent them to

7    O'Connell for document retention.  O'Connell states that there are about 1300 boxes of documents he

8    stores, and more documents are located in Ontario, California.  O'Connell states he has been through

9    the boxes and did not see 200-300 floppy discs.  This was all clarified by plaintiff <u>after</u> the motion to

10   compel hearing on January 31, 2006, as a result of the order that Mr. McGee provide a due diligence

11   report.

12   In addition, <u>after</u> Agri-Systems moved to compel the production of photos (and other things), Mr.

13   McGee's office located about 12 floppy discs of photos. These photos were produced to Agri-Systems

14   on January 24, 2006, just prior to the January 31, 2006 hearing.

15   At the time of the January 31, 2006 hearing:

16   1.    The person who took the photos said he took them and left them at Coast Grain.  He took

17         photos of key areas of the project construction, which construction is now in dispute.

18   2.    These photos are no where to be found.

19   3.    Other documents which should have been discovered and produced, but were not, e.g.,

20         the documents stored in co-counsel's off-site storage.

21   4.    Photo discs, which are supposed to be the same, contained additional photos which were

22         not on the original discs.

23   5.    Photos were not consecutively numbered and there appeared to be gaps.

24   5.    "New" floppy discs were discovered just prior to the January 31, 2006 hearing.

25   Thus, it is understandable that Agri-Systems and Mr. Doak were skeptical that they had received all the

26   photos.

27   Nonetheless, the issue is the specific accusation by Mr. Doak of <u>evidence tampering</u> by plaintiff's

28   counsel, an officer of this Court.  There is no evidence that Mr. McGee tampered with the evidence.  Mr.

Doak went too far.  As an officer of the Court, to accuse another officer of the Court with fraudulent, intentional and contemptuous behavior should not and cannot be ignored by the Court. To ignore such inexcusable conduct would be tantamount to condoning it.

**Court's Duty to Supervise Attorneys**

This Court has a duty to supervise the conduct of attorneys appearing before it.  *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996); *Lokary v. Kayfetz*, 974 F.2d 1166, 1170 (9th Cir.), *cert. denied, sub. nom., Pacific Legal Foundation v. Kayfetz*, 508 U.S. 931, 113 S.Ct. 2397 (1993); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983).  The Ninth Circuit Court of Appeals has observed:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar.  The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession.

*Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324-1325 (9th Cir.), *cert. denied sub nom. Shell Oil Co. v Gas-A-Tron of Ariz.*, 429 U.S. 861, 97 S.Ct. 164 (1976).

The determination to sanction is subject to a court's sound discretion.[1]  *See Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996); *Wages v. Internal Revenue Service*, 915 F.2d 1230, 1235 (9th Cir.) (Award of sanctions for filing pleadings which vexatiously multiply the proceedings), *cert. denied*, 489 U.S. 1096, 111 S.Ct. 986 (1991); *Erickson v. Newmar Corp.* 87 F.3d 298, 303 (9th Cir. 1996).  "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on."  *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir.) (internal quotations omitted), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757 (1990).

In seeking sanctions, Braun relies on the Federal Rules of Civil Procedure and this Court's Local Rules and inherent powers.

---

[1] Mr. Doak contends that his responses to the Court's questions were absolutely privileged and cannot form a basis for sanctions, citing *AroChem Inter. v. Buirkel*, 968 F.2d 266 (2nd Cir. 1992) (applying Cal.Civ.Code §47(b)(2)); *Siberg v. Anderson*, 50 Cal.3d 205, 212 (1990). Both cases, however, involved causes of action alleging defamatory statements made during the course of separate judicial proceedings.  Neither case involved the power of the Court to regulate actions which occur during the course of the litigation before the same Court, as discussed *infra*.

**Standards for Sanctions**

### 1.      Local Rules

Federal judges have broad powers to impose sanctions for abuses of process. *Gas-A-Tron*, 534 F.2d at 1324-1325. The sources of power to sanction include federal statutes and procedural rules, local rules, and a court's inherent power. For instance, this Court's Local Rule 11-110 provides: "The failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."

This Court's Local Rule 83-184(a) addresses attorney discipline and provides:

> In the event any attorney subject to these Rules engages in conduct that may warrant discipline or other sanctions, any Judge or Magistrate Judge may initiate proceedings for contempt under 18 U.S.C. § 401 or Fed. R. Crim. P. 42,[2] or may, after reasonable notice and opportunity to show cause to the contrary, take any other appropriate disciplinary action against the attorney. In addition to or in lieu of the foregoing, the Judge or Magistrate Judge may refer the matter to the disciplinary body of any Court before which the attorney has been admitted to practice.

Neither this Court's Local Rules nor the Federal Rules of Civil Procedure clearly define "other appropriate disciplinary action" for attorney conduct short of criminal contempt. Nonetheless, federal judges have an "arsenal of sanctions" to impose for unethical behavior and including monetary sanctions, contempt, dismissal and disqualification of counsel. *Erickson*, 87 F.3d at 303. The California Rules of Professional Conduct and the State Bar Rules of California may also provide appropriate sanctions. *See* Local Rule 83-180(e) (adopting California Rule of Professional Conduct and applicable court decisions as standards of professional conduct in this district).

Under California law, an attorney may use only methods "as are consistent with truth, and never seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." Cal. Bus. & Prof. Code, § 6068(d). "In presenting a matter to a tribunal, a member: (A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth; (B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice of false statement

---

[2]     18 U.S.C. § 401 authorizes a fine or imprisonment, at a court's discretion, for contempt of its authority, and for misbehavior of any person in the court's presence "or so near thereto as to obstruct the administration of justice." F.R.Crim.P. 42(b) punishes as criminal contempt conduct which a "judge saw or heard . . . or [] committed in the actual presence of the court."

1   of fact or law."  Cal. Rules of Professional Conduct, Rule 5-2000.

2       **2.      Rule 37(b) Sanctions**

3       Under F.R.Civ.P. 37(b)(2), if a party "fails to obey an order to provide or permit discovery" a

4   court "may make such orders in regard to the failure as are just," including to:

5       1.      Designate facts as established;

6       2.      Refuse to allow the disobedient party to support or oppose designated claims;

7       3.      Prohibit the disobedient party from introducing designated matters in evidence;

8       4.      Strike out pleadings or parts thereof;

9       5.      Stay further proceedings until an order is obeyed;

10      6.      Dismiss an action, proceeding or any part thereof; or

11      7.      Render judgment by default against the disobedient party.

12  F.R.Civ.P. 37(b)(2)(e) also authorizes monetary sanctions.

13      In lieu of F.R.Civ.P. 37(b)(2)(A) – (E) orders or in addition thereto, "the court shall require the

14  party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses,

15  including attorney's fees, caused by the failure, unless the court finds that the failure was substantially

16  justified or that other circumstances make an award of expenses unjust."  F.R.Civ.P. 37(b)(2).

17  F.R.Civ.P. 37(b)(2) "must be distinguished from Rule 37(a) which provides for the award of expenses

18  resulting from efforts to secure an order compelling discovery."  *Liew v. Breen*, 640 F.2d1046, 1051 (9th

19  Cir. 1981).  Thus, "attorney-time before and during" a hearing in which a court order is issued is "not

20  attorney-time incurred on account of failure to obey an order" and is not awardable.  *Liew*, 640 F.2d at

21  1051; *see also Wm. T. Thompson Co. v. General Nutrition Corp.*, 104 F.R.D. 119, 122-122, n. 1 (C.D.

22  Cal. 1985) (not entitled to sanctions for work done to obtain an order compelling discovery).

23      **3.      Inherent Power of Court to Impose Sanctions**

24      Federal courts have inherent power to impose sanctions, including an award of attorney's fees,

25  against attorneys and parties for "bad faith" conduct or "willful disobedience" of a court order.

26  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 101 S.Ct. 2123, 2132 (1991); *Roadway Express, Inc. v.*

27  *Piper*, 447 U.S. 752, 764-766, 100 S.Ct. 2455, 2463-2464 (1980).  The court's inherent powers "are

28  governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs

9

so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132.  Such inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Chambers*, 501 U.S. at 42; 111 S.Ct. at 2123.

This "Bad faith" is slightly different than bad faith under 28 U.S.C section 1927.  "Bad faith" means a party or counsel acted "vexatiously, wantonly or for oppressive reasons." *Chambers*, 501 U.S. at 45-46, 111 S.Ct. at 2133; *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259, 95 S.Ct. 1612, 1622 (1975).  Bad faith is tested objectively.  "[A] district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination and may be reversed only if it is clearly erroneous." *Ford v. Temple Hosp.*, 790 F.2d 342 (3rd Cir. 1986); *See Baker v. Cerberus, Ltd.,* 764 F.2d 204, 210 (3rd Cir. 1985); *Perichak v. International Union of Elec. Radio*, 715 F.2d 78, 79 (3rd Cir. 1983).  There must be "some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." *Ford,* 790 F.2d at 347.

When exercising discretion under its inherent sanction powers, a court is guided by considerations applicable to sanctions under the Federal Rules of Civil Procedure.  Factors to consider include:

1.   The nature and quality of the conduct at issue;

2.   As between attorney and client, who is responsible for the culpable conduct;

3.   Whether there was a pattern of wrongdoing to require a stiffer sanction;

4.   The sanctioned party's ability to pay;

5.   Whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice; and

6.   The existence of mitigating factors.

*Westinghouse*, 43 F.3d at 74.

An attorney's fee award under a court's inherent power is intended to vindicate judicial authority, not to provide a substantive remedy to an aggrieved party. "The wrong done was to the court." *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (3rd Cir. 1994).

**4.      Amount of Sanctions Requested**

Coast Grain asks for monetary sanctions:

Fees and costs:

| | |
|---|---|
| Amanda Glenn (15 hrs at $140) | $2,100 |
| Steve McGee (10 hours at $300) | $3,000 |
| Fees of expert from Digital Mountain | $6,128.83 |
| Fees by litigation support O'Connell & Assoc. | <u>$6,005</u> |
| Total | $17,233,83 |

The fees requested are broken down as follows:

Amanda Glen spent 30 hours in preparing this motion, but is asking that only 15 hours of time be awarded.  Steve McGee's filed declaration is a duplicate of Amanda Glen's declaration.

Kevin Fagalde of Digital Mountain was employed by plaintiff to determine whether the disc had been tampered with by anyone.  His declaration was filed as part of requirement on plaintiff's counsel for a due diligence report and in an effort to show that the disc had not been altered. His declaration does not state the total amount charged.

O'Connell's request for $6,005 was for meeting with Steve McGee, participating in interviews, reviewing and locating documents, and meeting with the expert.  The $6,005 is not broken down by hours or by an hourly rate, but is just claimed as a total.

The costs were incurred in an effort to clear Mr. McGee's name.  Due to the accusation that was without justification, Mr. McGee was justified in attempting to protect and defend his good name to the Court and to any one who might read the record at a later date.

The Court's prior orders required minimal diligence:

1.      That defendant retain an expert to review the discs to determine whether they had been altered or tampered with - as a direct result of the accusation that the discs had been altered.

2.      That the parties report to the Court as to the result of the inspection.

3.      That impliedly, if desired, to file a motion for sanctions.

1   The Court finds that reasonable sanctions should be imposed against solely Mr. Doak for the unfounded

2   accusation of evidence tampering.  Reasonable sanctions are those for retention of the Digital Mountain

3   expert and reasonable expenses associated with the preparation of this motion.  Accordingly, the Court

4   awards $1,800 for 6 hours of attorney time (2 hours for meeting with an expert and 4 hours for motion

5   preparation.)  Plaintiff asks for $6,128.83 for the expert's time, but a breakdown of this expense is not

6   provided.  Plaintiff is directed to submit supplemental evidence to establish this expense.  The Court will

7   impose only a reasonable hourly rate and reasonable hours as sanctions.

8                                              **CONCLUSION**

9           For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiff's

10  motion for sanctions:

11          1.      DENIES the request to revoke Jon Doak's pro hac vice status.

12          2.      DENIES the request for sanctions against defendant Agri-Systems.

13          3.      GRANTS the request for monetary reimbursement sanctions against Jon Doak in the

14                  amount of $1,800.

15          4.      DIRECTS plaintiff to submit a supplemental declaration as to the expert expense from

16                  Digital Mountain, Inc.

17  IT IS SO ORDERED.

18  **Dated:    April 28, 2006**                           **/s/ Lawrence J. O'Neill**
    b9ed48                                      UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28

                                                    12