1 | STEVEN D. McGEE  71886
AMANDA J. GLENN 234214
2 | KIMBLE, MacMICHAEL & UPTON
A Professional Corporation
3 | 5260 North Palm, Suite 221
Post Office Box 9489
4 | Fresno, CA  93792-9489
Telephone:  (559) 435-5500
5 | Facsimile:   (559) 435-1500

6 | RILEY C. WALTER  91839
WALTER LAW GROUP
7 | Woodward Centre
7110 N. Fresno Street, Suite 400
8 | Fresno, CA  93720
Telephone:  (559) 435-8020
9 | Facsimile:   (559) 435-9868

10 | Attorneys for GREG BRAUN,
Plan Agent for COAST GRAIN COMPANY

11 |

12 | UNITED STATES DISTRICT COURT

13 | EASTERN DISTRICT OF CALIFORNIA

14 | FRESNO DIVISION

* * *

15 |

16 | GREG BRAUN, Chapter 11 Trustee for      )      Case No.:  CIV-F-02-6482 AWI LJO
COAST GRAIN COMPANY, a California         )
corporation,                                               )
17 |                                                                )      **PLAINTIFF'S TRIAL BRIEF**
              Plaintiff,                                      )
18 |                                                                )
              vs.                                              )      **Date:    June 6, 2006**
19 |                                                                )      **Time:    9 a.m.**
AGRI-SYSTEMS, a Montana corporation,   )      **Dept:    2**
20 |                                                                )      **Judge:  Hon. Anthony W. Ishii**
              Defendant.                                   )
21 | _____ )
                                                                   )
22 | AND RELATED CROSS-CLAIM.             )
                                                                   )
23 | _____ )

24 |           Plaintiff Greg Braun, former Chapter 11 Trustee, and now Plan Agent for Coast Grain

25 | Company, a California corporation (hereinafter referred to as "Plaintiff") respectfully submits the

26 | following trial brief as a summary of his legal and factual positions in this matter:

27 | ///

28 | ///

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. BOX 9489
FRESNO, CA 93792-9489

1
Plaintiff's Trial Brief

# I.

## **INTRODUCTION**

The Coast Grain Company was formerly the debtor in possession in a Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of California. Plaintiff was appointed Chapter 11 Trustee of the Coast Grain Estate in 2002. Pursuant to the Trustee's confirmed Third Amended Chapter 11 Plan, Greg Braun (the former Chapter 11 Trustee) is now the Plan Agent with authority to pursue this action on behalf of the Coast Grain Estate.

Coast Grain was in the business of operating grain mill facilities in California and other states. Agri-Systems is a Montana corporation, and is a contractor in the business of designing and constructing feed, grain, and other bulk materials-handling facilities in California and other states. Agreements were entered into between Coast Grain and Agri-Systems under which Agri-Systems was to design, engineer and construct a dairy feed mill facility. By this lawsuit, Plaintiff seeks to recover damages it claims to have suffered as a result of acts, omissions and breaches it alleges against Agri-Systems. Agri-Systems denies any further responsibility to Plaintiff and alleges that Agri-Systems has been damaged by virtue of alleged nonpayment of contractual obligations.

# II.

## **STATEMENT OF RELEVANT FACTS**

### A.    The 2000 Contract between Coast Grain and Agri-Systems

Coast Grain is the former owner of a certain parcel of real property located in Madera County, California ("the property"). On or about March 31, 2000, Coast Grain entered into a written Construction Agreement with Agri-Systems (the "2000 Contract"), whereby Agri-Systems agreed to design, engineer, construct and install the project. The scope of work included, among other things, the design and construction of the following: eight silos, each one being forty-four feet in diameter; and having a product receiving system with a rail line receiving pit, receiving conveyors and a bulk weigher; a reclaim system having various valves and conveyor belts for transporting products from one area of the facility to another; a flaking system; and a slip-form concrete building to house said flaking system, which included a boiler

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1 building control room and a load-out system for loading the finished products onto trucks. The
2 First Agreement further specified that Agri-Systems would complete the project within 365
3 calendar days of commencing the work. The original contract price was $8,543,000.00. To date,
4 Agri-Systems has been paid over $10,390,000 for its work on the project.

5 **B.    Project Delays and Incompletion**

6 Various disputes subsequently arose between the parties concerning their respective
7 rights and obligations. Several of them pertained to Agri-Systems' responsibility for significant
8 delays in the project. A substantial delay resulted from a fire caused by Agri-Systems during
9 construction, which halted work upon the project from May 29, 2001, through July 17, 2001 – a
10 total of 49 days. Other delays caused by Agri-Systems delayed the project further.

11 On or about August 20, 2001, Agri-Systems threatened to cease work upon the project.
12 At that time, Agri-Systems represented to Coast Grain that the project was approximately eighty-
13 five percent (85%) complete. On or about September 18, 2001, Agri-Systems provided notice
14 that it would cease work upon the project if Coast Grain did not make certain payments within
15 ten days. On September 28, 2001, Agri-Systems abandoned the project by purportedly
16 terminating the 2000 Contract. By that time, the project was still incomplete and already
17 significantly behind schedule due to Agri-Systems' delays. Furthermore, Agri-Systems left a
18 long list of unrepaired deficiencies and uncompleted work, which it refused to resolve despite its
19 contractual obligations.

20 **C.    The 2001 Contract between Coast Grain and Agri-Systems**

21 It is undisputed that in the late summer and early fall of 2001, Coast Grain was in serious
22 financial trouble. Prior to the 2001 Contract being entered into between Coast Grain and Agri-
23 Systems, Coast Grain's operations were taken over by new management personnel.

24 Three days before an involuntary bankruptcy proceeding was filed on behalf of Coast
25 Grain on October 14, 2001, Coast Grain and Agri-Systems executed a second written
26 Construction Agreement (the "2001 Contract"). The 2001 Contract was executed within the
27 preference and fraudulent conveyance period of Coast Grain's bankruptcy. The 2001 Contract
28 provided, among other things: (a) that the project would be completed within sixty-five (65)

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

3
Plaintiff's Trial Brief

1 working days of the 2001 Contract's execution; and (b) that Agri-Systems would assume
2 additional responsibilities, which included **performing all work and supplying all materials**
3 **needed to obtain various operation and occupancy permits from the Madera County**
4 **Building Department.**

5      Under the 2001 Contract, Agri-Systems was to receive the sum of $2 million in the form
6 of a note secured by a deed of trust. Agri-Systems also received the sum of $500,000, which it
7 applied to outstanding invoices on the 2000 Contract. Pursuant to the 2001 Contract, on or about
8 October 15, 2001, Coast Grain executed the promissory note and deed of trust. Agri-Systems
9 thereafter purportedly resumed work on the project.

10      **D.**    **Agri-Systems' Construction Defects and Other Breaches of the Contracts**

11      Within a short time thereafter, Agri-Systems performed some work but effectively
12 abandoned the project again, claiming it had achieved "completion." Coast Grain reviewed the
13 work performed by Agri-Systems, and discovered many defects and material breaches of the
14 2001 Contract (all outlined in greater detail below).

15      First, Agri-Systems failed to perform the work, and provide the materials, necessary to
16 obtain operation and occupancy permits from the Madera County Building Department.
17 Specifically, the County required that Agri-Systems install a pressurized fire hydrant system,
18 costing over $100,000, before the County would issue the necessary permits. Agri-Systems
19 refused to provide and install the system.

20      Second, Agri-Systems failed to complete the project by the 2001 Contract's extended
21 deadline of February 15, 2002, or at all. Coast Grain as forced to retain replacement contractors
22 and use its own forces at additional and substantial expense in order to complete or repair the
23 work of Agri-Systems. In addition, the acts or omissions of Agri-Systems caused delays in the
24 issuance of the certificate of occupancy until March 7, 2003 – more than one (1) year after Agri-
25 Systems was to have completed its work under the 2001 Contract.

26      Ultimately the facility was sold in the Coast Grain bankruptcy in May of 2003. The sale
27 price was approximately $5 million, less than half the amount paid to Agri-Systems to design
28 and construct the facility. In all, Coast Grain had invested over $14 million in the Madera

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-0489

4
Plaintiff's Trial Brief

1   project, including the purchase of the real property, construction of a rail loop and the monies
2   paid to Agri-Systems to construct the facility.

3       Third, the work performed by Agri-Systems contained many deficiencies and defects. It
4   was not performed in a reasonable, prudent and workmanlike fashion. It failed to conform to the
5   approved construction plans and specifications of the project, and did not satisfy industry
6   standards, building codes or OSHA requirements. Some examples include the following:

7       (1)    Agri-Systems failed to install an entire floor in the mill building, which severely
8   impacted the structural integrity of the building.

9       (2)    Agri-Systems did not properly install the steel rebar within the concrete walls of
10  the silos. The installation did not conform to the plans and specifications of the project, industry
11  standards, building codes, or OSHA requirements. [1]

12      (3)    Agri-Systems improperly placed and welded several key steel attachments and
13  support beams, and failed to properly mount the structural steel support attachments. [2]

14      (4)    Agri-Systems did not construct the silo walls in accordance with the project plans
15  and specifications. It was recently discovered that the concrete wall thickness at the top of the
16  silos are as little as 8¼", rather than the 10" of thickness as required by the plans and
17  specifications. The result was a substantial cost savings to Agri-Systems for concrete never
18  installed, while adversely impacting the structural integrity and life expectancy of the facility.

19      (5)    Agri-Systems installed a high voltage electrical line ("KV line") at an inadequate
20  and unsafe depth which had to be completely removed and reconstructed at substantial cost.

21      (6)    Agri-Systems failed to install the boiler system in a safe and proper manner,
22  which had to be reworked at substantial cost.

23  ///

24

25  ———————————————————

[1] A second fire occurred at the facility approximately one year ago, severely damaging at least two of the silos.
26  During the course of repairs, the structural engineering experts were able to confirm and document serious structural
    deficiencies resulting from Agri-Systems' failure to properly install rebar in the silos, and its failure to follow the
27  plans and specifications regarding installation of the roof decks.
[2] In fact, during the course of constructing the mill building, Agri-Systems failed to install the vertical concrete wall
28  attachment plates according to the plans and specifications. The project structural engineer was required to redesign
    significant portions of the building to correct the structural deficiencies. Despite such revisions, Agri-Systems
    subsequently failed to follow the revised drawings as well.

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1   (7)   Agri-Systems failed to properly install the electrical system, including shoving
2   unattached wires into conduit at both ends, leaving the electrical connections with the appearance
3   of having been done properly and for the purpose of covering up their lack of completion of the
4   electric work.

5   (8)   Agri-Systems did not properly connect the horizontal floor beams to the top of
6   the silo walls as required by the project plans and specifications.

7   (9)   Agri-Systems inadequately designed the project (this was a design build project).
8   For example, there is no elevator to hoist equipment in the mill building in the facility, which is
9   several hundred feet tall.

10   (10)   Agri-Systems' construction methods and finished product did not comply with
11   generally accepted industry standards.

12   (11)   Agri-Systems failed to comply with industry standards and OSHA requirements
13   regarding safety features, including failure to insulate boiler pipes and failure to install hand rails
14   and guard rails to protect the safety of workers.

15   (12)   Agri-Systems failed to prime and paint all metal paint grade surfaces.

16   (13)   Agri-Systems failed to properly install the silo roofs, causing them to leak.

17   (14)   Agri-Systems also failed to complete the landscaping, paving and other project
18   construction requirements.

19   Plaintiff intends to present evidence at trial from several qualified experts about Agri-
20   Systems' failure to follow the approved construction plans, specifications and industry standards,
21   as well as other design and construction deficiencies.  The experts will testify about the cost to
22   remediate the deficiencies.  In addition, Coast Grain expended in excess of $500,000 in
23   attempting to "complete" the work which was to have been performed by Agri-Systems or
24   otherwise correcting the work improperly performed by Agri-Systems.

25   Agri-Systems refused to return to the project site to complete the project or perform any
26   corrective work. Agri-Systems also refused to provide operating manual specifications or
27   calibration information for the equipment that it installed in the facility. Coast Grain was
28   therefore forced to retain other contractors and professionals, at Coast Grain's own expense, to

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9480

1  bring the facility to an operational status. Coast Grain was also forced to obtain the operation and
2  calibration information from other sources. All of these things caused additional significant
3  delays and additional costs to the project.

4      **E.      Sale of the Property**

5      On or about June 5, 2003, the Coast Grain bankruptcy court authorized the sale of the
6  property to a third party for a gross value of $5,100,000.00 – which included personal property
7  of substantial value. The proceeds from the sale were used to pay the senior secured claims
8  against the property. The remaining amount of $2,577,101.58 was impounded by the Trustee.

9      Agri-Systems contends that it has a valid mechanic's lien and deed of trust against those
10 proceeds of sale. Such contention is disputed by Plaintiff. The mechanic's lien is disputed on the
11 grounds that it is inflated, and comprises amounts not properly includable in a mechanic's lien.
12 The deed is trust is believed and asserted to have been a fraudulent conveyance.
13 The following is a brief summary of the pending claims the parties have asserted against each
14 other:

15                                    **III.**

16 **STIPULATIONS AND ADMISSIONS NOT CONTAINED IN PRE-TRIAL ORDER**

17     Pursuant to the April 19, 2006, Pre-Trial Conference, Plaintiff and Agri-Systems have
18 agreed to the following:

19     1.     Plaintiff agrees and hereby dismisses without prejudice its claims based upon the
20 alleged breach of the confidentiality agreement.  This dismissal is to be entered without costs
21 ordered against either of the parties.

22     2.     Regarding motions in limine referencing insurance, the parties have agreed that
23 there shall be no mention of insurance by either party **except** that the parties may refer to, present
24 evidence of and argue that there was a builders all-risk fire insurance policy in place at the time
25 of the May 2001 fire; that Agri-Systems was retained to repair the fire damage; and that Agri-
26 Systems was paid by Coast Grain's business all-risk insurance policy for Agri-Systems' work on
27 the fire damage repairs.

28 ///

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

7
Plaintiff's Trial Brief

1

**IV.**

2

**SUMMARY OF LEGAL ARGUMENTS AND POINTS OF LAW**

3     **A.**     **Summary of Coast Grain's So-called "Construction Defects" Claims.**
4 Plaintiff claims that in March of 2000 Coast Grain entered into a written construction contract
5 agreement with Agri-Systems under the terms of which Agri-Systems agreed to act as the design
6 build general contractor for Coast Grain. Under the terms of that agreement, Plaintiff claims that
7 Agri-Systems was responsible for designing, engineering and constructing the Project. On
8 March 31, 2000, a written agreement was entered into between Coast Grain and Agri-Systems
9 which provided that Agri-Systems was to be paid the sum of approximately $8,543,000 for
10 designing, installing and constructing the Project (the "2000 Contract"). The agreement also
11 provided that construction would be completed within 365 calendar days.

12     By August of 2001, disputes had arisen between the parties, including the scope of each
13 party's responsibilities under the 2000 Contract, the timeliness of performance or lack thereof by
14 each of the parties, and what, if any, continuing obligations the parties had to each other. In
15 August of 2001, Agri-Systems recorded a mechanic's lien against the Project for alleged
16 nonpayment of invoices due on the 2000 Contract and filed the mechanic's lien action in the
17 Superior Court in and for the County of Madera.

18     On the eve of an involuntary bankruptcy and on or about October 14, 2001, a second
19 written contract was entered into between Coast Grain on the one hand and Agri-Systems on the
20 other hand (the "2001 Contract"). The 2001 Contract provided that Agri-Systems would provide
21 everything required for the completion of the Project and that the Project would be completed
22 within 65 normal working days from October 14, 2001, which was on or about February 1,
23 2002.

24     Plaintiff claims that Agri-Systems breached both of the written agreements between the
25 parties. Primarily, Plaintiff claims that Agri-Systems failed to complete its contractual
26 obligations in a timely fashion, failed to ever complete its scope of work regarding completing
27 construction of the Project, failed to design and/or construct the Project in a reasonable and
28 workmanlike fashion nor in accordance with industry standards, failed to meet applicable

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-0489

8
Plaintiff's Trial Brief

1   building codes or OSHA requirements, and refused to return to the Project site to complete the

2   Project.

3        Plaintiff contends that Agri-Systems breached its construction contracts with the Coast

4   Grain plaintiff, that Agri-Systems breached its express and implied warranties and was negligent

5   in its acts or omissions related to the construction of the Project.

6        Plaintiff seeks to recover from Agri-Systems Coast Grain's costs for completion and

7   correction of the work which Agri-Systems either failed to perform or failed to perform

8   correctly.  Plaintiff intends to present evidence of expenditures of approximately $500,000 to

9   complete the project and correct Agri-Systems' work.  Plaintiff also seeks to recover liquidated

10  damages from Agri-Systems provided for in the 2001 contract between the parties.  Agri-

11  Systems should have completed its work by February 15, 2002.  The certificate of occupancy

12  was not issued until March 7, 2003, more than a year after the agreed-upon completion date.

13  Plaintiff seeks to recover nearly $100,000 in liquidated damages for Agri-Systems' delays in

14  completion of the project.

15       Plaintiff had also sought to recover from Agri-Systems its contract-based damages for the

16  structural deficiencies and the blatant failures of Agri-Systems to perform its work in accordance

17  with the design, plans, building codes, industry standards and other relevant authorities.  Plaintiff

18  had intended to present evidence through qualified experts that the cost to correct the deficient

19  work by Agri-Systems exceeds $7 million.  However, by virtue of this Court's partial summary

20  judgment ruling (Doc. 355), the Court has barred Plaintiff from seeking affirmative relief for this

21  claim, or at least barring Plaintiff from utilizing anticipated costs of repair as a proper measure of

22  damages.[3]  However, case law clearly indicates that the anticipated cost of repairs can properly

23  be introduced into evidence as an offset to Agri-Systems' contract-based claims.

24       **B.    Coast Grain's "Avoidance Claims" Against Agri-Systems.**  Plaintiff has also

25  filed in the Coast bankruptcy a preference and fraudulent transfer action against Agri-Systems.

26

27  _____

28  [3]  Plaintiff respectfully disagrees with the Court's ruling on this issue and believes the Court has committed an error
    materially impacting Plaintiff's case.  Plaintiff objects to the Court's partial summary judgment ruling and intends to
    appeal this issue after a final determination on the merits in the District Court.

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

9
Plaintiff's Trial Brief

1  Plaintiff claims that an October 15, 2001 payment of $500,000 to Agri-Systems and concurrent
2  delivery of a $2 million note secured by a deed of trust, security agreement and UCC-1 financing
3  statement in favor of to Agri-Systems on the eve of Coast Grain's bankruptcy are avoidable
4  transfers. Plaintiff also claims that other transfers made during the 90 day preference period are
5  avoidable transfers. Plaintiff seeks the return of the $500,000 payment, and a release of the
6  $2 million note and deed of trust and return of an additional $159,000 in voidable transfers
7  (payments made to Agri-Systems) during the 90-day preference period.

8  Plaintiff also seeks a determination that the disputed $2 million obligation should not be
9  deemed a secured obligation. Agri-Systems disputes these contentions. The parties' contentions
10 were the subject of an adversary proceeding entitled *Greg Braun, etc. v. Agri-Systems, etc., et al.*
11 (United State Bankruptcy Court for the Eastern District of California, Fresno Division,
12 Adversary Proceeding No. 02-1355). Plaintiff contends these claims are now included in this
13 consolidated action. (See Stipulation for Removal of August 19, 2004 and Consolidation and
14 Order thereon, filed December 1, 2004; See also Docket No. 94). Plaintiff also asserts the right to
15 set off any affirmative recovery against any claim by Agri-Systems.

16  **C.   Summary of Agri-Systems' Pending Claims and Plaintiff's Responses.**

17  i.   Agri-Systems' Claims against Coast Grain:

18       • Agri-Systems seeks to recover the principal sum of $1,030,000 based upon
19         the mechanic's lien it filed in August of 2001 arising out of the First
20         Agreement. It also seeks to recover interest and attorneys' fees on that
21         claim. Agri-Systems argues its claim is secured.

22       • Agri-Systems claims it is entitled to be paid $2 million on the note secured
23         by the deed of trust dated October 14, 2001, for work it allegedly
24         performed on the Second Agreement. Agri-Systems also seeks to recover
25         interest and attorneys' fees. Agri-Systems asserts this claim as being
26         secured as well.

27  ///
28  ///

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

ii.   Summary of Coast Grain's Response to Agri-Systems' Claims:

- At the heart of Coast Grain's opposition is that Agri-Systems materially breached its contracts with Coast Grain by failing to fully and properly perform its contracts, by failing to convey to Coast Grain the benefit of its bargain, by failing to follow approved construction plans, specifications and industry standards and by abandoning the project, as more completely described above.

- The mechanic's lien claim, if proven, should be limited to approximately $680,000, not $1,030,000. The $680,000 sum is the amount reflected on Agri-Systems' books as the outstanding sum due for the work allegedly performed by Agri-Systems as of the date it filed its mechanic's lien. Case authority does not support recovery for aspects of the mechanic's lien which do not add value to the property, such as interest and demobilization.

- Agri-Systems' claims are subject to the Coast Grain adversary proceedings which assert causes of action for preference, fraudulent conveyance, and an objection to the Agri-Systems' claim in the Coast Grain bankruptcy. The implications are outlined below.

- Agri-Systems was paid $500,000 on October 14, 2001. Agri-Systems applied that payment to outstanding invoices for work done under the First Agreement. As such, the $500,000 payment is a preference which must be returned to the Coast Grain bankruptcy estate. Because the $500,000 was paid within the preference period when Coast Grain was insolvent, and since the payment was applied to old debt, the $500,000 payment is a preference. As such, Agri-Systems cannot receive any distribution from the Coast Grain estate until it repays the preference. See 11 U.S.C. section 502(d).

- The deed of trust which secured the $2 million note dated October 14,

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

11
Plaintiff's Trial Brief

2001, is a result of a fraudulent conveyance because it was recorded days before Coast   Grain filed bankruptcy and is not supported by reasonably equivalent consideration.  If Coast Grain is proven to be insolvent and it received less than reasonably equivalent value for the deed of trust, the deed of trust should be voided and extinguished.

- Coast Grain's damage claim against Agri-Systems should, at the minimum, be  set off against any successful claim by Agri-Systems.

**D.      Plaintiff Seeks the Following Relief:**

- Plaintiff is seeking monetary damages resulting from Agri-Systems' breach of the construction contracts and/or breach of express warranties and implied warranties.  Plaintiff seeks to recover approximately $500,000, plus interest at the maximum legal rate for reimbursement of costs incurred in correcting or completion work performed or to have been performed by Agri-Systems.  Plaintiff also seeks to recover from Agri-Systems liquidated damages under the 2001 contract in the amount of approximately $100,000 for the delay of over a year in obtaining the certificate of occupancy.

- Plaintiff seeks to avoid the sum of $500,000 paid to Agri-Systems on October 15, 2001, as a voidable preference or fraudulent transfer.  Plaintiff seeks to return of the $500,000 payment to Agri-Systems. Plaintiff seeks a determination that the October 14, 2001, promissory note secured by a deed of trust in the amount of $2 million and the security agreement should be determined a voidable preference and/or fraudulent transfer and that the deed of trust should be avoided effective October 14, 2001. Plaintiff seeks a determination that any successful claim of Agri-Systems based thereon be characterized as an unsecured claim. Plaintiff seeks avoidance of transfers made during the 90 day preference period in the amount of $159,000. Plaintiff also seeks a determination regarding the

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1  nature, extent and validity of the $2 million note and deed of trust.

2  • Plaintiff also seeks a determination by means of declaratory relief that the

3  mechanic's lien claimed by Agri-Systems in the amount of $1,030,000 is

4  not a valid mechanic's lien. To the extent that the claimed mechanic's lien

5  is determined to be valid, Plaintiff seeks a determination of the nature,

6  extent and validity of any such lien. In addition to being invalid, Plaintiff

7  claims that the mechanic's lien contains amounts not properly included in

8  a mechanic's lien. Plaintiff claims he is entitled to set off these claims

9  against Agri-Systems' claims.

10  • Plaintiff also seeks an order sustaining his objection to Agri-Systems'

11  Proof of Claim No. 291, in the principal amount of $1,030,000. 11 U.S.C.

12  § 502(b). To the extent that Proof of Claim No. 291 is determined to be

13  valid in some amount, Plaintiff seeks an order disallowing Proof of Claim

14  No. 291 until such time as Agri-Systems repays or returns any avoided

15  transfers. 11 U.S.C. § 502(d). Plaintiff also seeks an order sustaining his

16  objection to Agri-Systems' Proof of Claim No. 290, in the principal

17  amount of $2,000,000. 11 U.S.C. § 502(b). To the extent that Proof of

18  Claim No. 290 is determined to be valid in some amount, Plaintiff seeks

19  an order disallowing Proof of Claim No. 290 until such time as Agri-

20  Systems repays or returns any avoided transfers. 11 U.S.C. § 502(d).

21  **E.    POINTS OF LAW**

22  i.    The Construction Defect Action

23  • **Breach of Contract and Breach of Express and Implied Warranties**

24  A trustee and/or plan agent is the representative of the bankruptcy estate, and steps into

25  the shoes of the debtor with respect to all rights, responsibilities and liabilities. *In re Great*

26  *Northern Paper, Inc.,* 299 B.R. 1, 5 (D.Me. 2003); *In re S.T.G. Enterprises, Inc.,* 24 B.R. 173,

27  176 (Bankr. N.J. 1982). Moreover, the sale of a property does not automatically terminate the

28

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1   former owner's right to bring an action for any injury to the property. *Vaughn v. Dame Constr.*
2   *Co.*, 223 Cal.App.3d 144, 146-147, 272 Cal.Rptr. 261, 262 (Cal. Ct. App. 1990).

3        To recover damages from Agri-Systems for breach of contract, Plaintiff must prove all of
4   the following: (1) That Coast Grain entered and Agri-Systems into a contract; (2) that Coast
5   Grain did all, or substantially all of the significant things that the contract required it to do or that
6   it was excused from having to do those things; (3) that all conditions required for Agri-Systems'
7   performance had occurred; (4) that Agri-Systems failed to do something that the contract
8   required it to do; and (5) that Coast Grain was harmed by that failure.

9        A party breaches a contract if, among other things, it fails to perform pursuant to the
10  terms thereof. *Reichert v. General Ins. Co. of America*, 68 Cal.2d 822, 830, 69 Cal.Rptr. 321,
11  325 (Cal. Ct. App. 1968). Such breach may occur by: failing to construct the project pursuant to
12  its plans and specifications; refusing to honor the express warranties in the agreements; failing to
13  complete the project in a timely manner; and finally, abandoning the project altogether. See
14  *Schauer v. Mandarin Gems of Cal. Inc.*, 125 Cal.App.4th 949, 958-959, 23 Cal.Rptr.3d 233, 240
15  (Cal. Ct. App. 2005) (breach of express warranties); see also *Hauter v. Zogarts*, 14 Cal.3d 104,
16  119, 120 Cal.Rptr. 681, 690 (Cal. 1975) (no waiver of express and implied warranties unless
17  expressly stated); Cal. Bus. & Prof. Code, § 7113 (abandonment).

18       As for Plaintiff's claims concerning Defendant's breach of express warranties, the 2000
19  Contract expressly warrants the following:

20       "3.4    Contractor shall comply with all Federal, state and local laws, codes
         (including building codes), rules, regulations and orders (collectively, "Laws")
21       applicable to Contractor in connection with the Work and the Work when
         completed will comply with all Laws applicable to the work…
22
23            (ii)    Contractor shall perform its work and shall cause its subcontractors
         to perform their Work in accordance with all applicable rules, regulations,
         orders, standards and interpretations promulgated under the Federal
24       Occupational Safety and Health Act, as amended ("OSHA"), and the
         California Occupational Safety and Health Act, as amended ("Cal-
25       OSHA") and shall design and construct the work to comply with all
         appliable, rules, regulations, orders, standards and interpretations
26       promulgated under OSHA and Cal-OSHA.
27
28

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

3.5    Subject to the limitations specified herein and in other provisions of the Contract Documents, including without limitation, limitations with respect to warranties and materials, leakage and capacities, Contractor warrants that the Work will be of good quality and free from defects in workmanship and will conform to the requirements of the Contract Documents." See 2000 Contract, p. 2.

Furthermore, California law implies various warranties into each construction contract, including warranties that the structure was designed and constructed in a reasonably workmanlike manner, and that it is fit for its intended uses both as to workmanship and materials. *Pollard v. Saxe & Yolles Dev. Co.,* 12 Cal.3d 374, 379, 380, 115 Cal.Rptr. 648, 651 (Cal. 1974); *Aced v. Hobbs-Sesack Plumbing Co.,* 55 Cal.2d 573, 582, 12 Cal.Rptr. 257, 262 (Cal. 1961).

Any waiver of an implied warranty must be conspicuous. See Cal. Comm. Code, § 2316, subd. (2); *Frederickson & Watson Constr. Co. v. Dept. Pub. Wks.,* 28 Cal.App.3d 514, 518, 104 Cal.Rptr. 421, 424 (Cal. Ct. App. 1972); *Siemens Credit Corp. v. Newlands,* 905 F.Supp. 757, 764-765 (N.D. Cal. 1994) (under California law, "[t]he code defines conspicuous as so written that a reasonable person against whom it is to operate ought to have noticed it... A printed heading in capital letters... is conspicuous... Language in the body of a form is conspicuous if it is in larger or other contrasting type or color," internal citations omitted.)

Plaintiff anticipates that Defendant will contend the 2000 Contract waived all implied warranties, based upon certain language found in Exhibit W of that Contract. However, there is no reference to Exhibit W in Section 3 of the Contract, where the express warranties are found. Instead, the only reference to Exhibit W is found in Section 7, entitled "Equipment, Components and Warranties." The particular language incorporating Exhibit W provides the following:

"[a]ny equipment, components, products or supplies provided by Contractor as part of the Contract will be warranted in respect to defective material as outlined in Contractor's Standard Warranty Policy AS36099, a copy of which is attached hereto as Exhibit 'W' and incorporated herein by this reference."

To a reasonable person, such language appears to state that any limitations of warranty apply only to the equipment, not to Defendant's work on the Project. See also Cal. Civ. Code, § 1654 (ambiguities construed against party causing uncertainty); *Taylor v. J.B. Hill Co.,* 31 Cal.2d

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

373, 374, 189 P.2d 258, 259 (Cal. 1948). Furthermore, there is also no attempt by Defendant to set apart the purported disclaimer in a conspicuous manner – instead, it is buried in a section pertaining to equipment warranties, and in the standard type and size. Thus, Plaintiff believes that any disclaimer effected by such language (if any) should pertain only to the "equipment, components, products or supplies provided by [Defendant]." See 2000 Contract, p. 6 (Paragraph 7.1).

Plaintiff also anticipates that Defendant will contend the 2001 Contract "cancelled" any warranties, express or implied, for Defendant's work. However, the Court has already adjudicated this topic in its Memorandum Opinion and Order on Defendant's Motion for Partial Summary Judgment, issued May 15, 2006. Specifically, the Court found that the 2001 Contract did not "cancel" Plaintiff's claims for Defendant's defective work, since the claims were not executory at the time the 2001 Contract was entered into. See Order, pp. 18:12-16; 19-21. The Court further found that the 2001 Contract did not serve as a release, waiver or forfeiture of those claims. See Order, pp. 19:16-18; 21:17-22:12; 23:14-16. Thus, Plaintiff is entitled to recover its damages for Defendant's breach of the express and implied warranties attached to Defendant's work under the 2000 Contract.

Furthermore, as to Defendant's work under the 2001 Contract, said Contract expressly warrants the following: "[t]he Contractor to perform all work and supply all materials necessary to obtain the County Building Department's permission to operate and obtain occupancy permit for the [Project]." There is no language in the 2001 Contract that can be construed, even remotely, as a waiver of the implied warranties attached to Defendant's work under the 2001 Contract. Thus, the express and implied warranties of the 2001 Contract remain in full force and effect, and Plaintiff is also entitled to recover its damages for Defendant's breach of the express and implied warranties attached to Defendant's work under the 2001 Contract.    The measure of general damages for the breach of a contract is that amount which will compensate the injured party for all the detriment or loss caused by the breach, or which in the ordinary course of things, would be likely to result therefrom. The injured party should receive those damages naturally arising from the breach, or those damages which might have been reasonably contemplated or

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

foreseen by both parties, at the time they made the contract, as the probable result of the breach. As nearly as possible, the injured party should receive the equivalent of the benefits of performance.

California law permits an injured party to recover the full benefit of its bargain. *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 455, 277 Cal.Rptr. 40, 47-48 (Cal. Ct. App. 1990). When the contract is breached, the injured party "should receive as nearly as possible the equivalent of the benefits of performance." *Id.* The purpose of such remedy "is to put the injured party in as good a position as he would have been had performance been rendered as promised." *Id.*

In the context of construction projects, this may include all of the following:

(1)     Cost incurred in repairing or replacing the defective work. (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*, 114 Cal.App.3d 783, 802, 171 Cal.Rptr. 334, 345 (Cal. Ct. App. 1981) (also favoring costs of repair over diminution in value); *Stearman v. Centex Homes,* 78 Cal.App.4th 611, 624, 92 Cal.Rptr.2d 761, 770 (Cal. Ct. App. 2000). Such recovery is not limited to the amount actually paid for repairs, since that may not adequately reflect the full benefit of the bargain. *Smith v. Hill*, 237 Cal.App.2d 374, 388, 47 Cal.Rptr. 49, 58 (Cal. Ct. App. 1965).)

(2)     Costs incurred in furthering or completing the project after the contractor's abandonment. (*Mozzetti v. City of Brisbane,* 67 Cal.App.3d 565, 576, 136 Cal.Rptr. 751, 757 (Cal. Ct. App. 1977); *Tally v. Ganahl,* 151 Cal. 418, 420, 90 P. 1049, 1050 (Cal. 1907).)

(3)     Delay damages, and loss of use. (*Pacific Employers Ins. Co. v. City of Berkeley,* 158 Cal.App.3d 145, 156, 204 Cal.Rptr. 387, 394 (Cal. Ct. App. 1984) (abandonment does not free contractor from liability for delay damages); *Mozzetti,* 67 Cal.App.3d at 576; Tally, 151 Cal. at 420.)

(4)     Pre-judgment interest. (Cal. Civ. Code, § 3287; see also *North Oakland Med. Clinic v. Rogers,* 65 Cal.App.4th 824, 828, 76 Cal.Rptr.2d 743, 745 (Cal. Ct. App.

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

17
Plaintiff's Trial Brief

1998); *Engelberg v. Sebastiani*, 207 Cal. 727, 729, 279 P. 795, 795 (Cal. 1929) (en banc).)

(5)   Attorneys' fees incurred, where provided by the contract. (See Cal. Civ. Code, § 1717.)

(6)   Costs and expenses incurred by the prevailing party, including, but not limited to expert witness fees. (Cal. Code Civ. Proc., § 1032, subd. (b); *Carwash of America-PO LLC v. Windswept Ventures No. 1*, 97 Cal.App.4th 540, 543, 118 Cal.Rptr.2d 536, 538 (Cal. Ct. App. 2002); *Michell v. Olick*, 49 Cal.App.4th 1194, 1198, 57 Cal.Rptr.2d 227, 230 (Cal. Ct. App. 1996); *Pirkig v. Dennis*, 215 Cal.App.3d 1560, 1565-1566, 264 Cal.Rptr. 494, 497-498 (Cal. Ct. App. 1989).)

- **Negligence**

Plaintiff claims that it was harmed by Agri-Systems' negligence. To establish this claim, Plaintiff must prove all of the following: (1) that Agri-Systems was negligent; (2) that Plaintiff was harmed; and (3) that Agri-Systems negligence was a substantial factor in causing Plaintiff's harm.

In entering into the contracts with Coast Grain, Agri-Systems had a duty to perform all of their work in a prompt, reasonable, prudent and workmanlike fashion. A contractor who is careless and negligent in the performance of the work is liable to the owner for any damages proximately caused. (*Muth v. Urricelqiu* (1967) 251 Cal. App. 2d 901, 908; see also 11 Cal. Real Est. § 29:17, p. 102 (3d ed.).) Agri-Systems' breached their duty by failing and refusing to perform their work in a reasonable, prudent and workmanlike fashion. As a direct and proximate result of the negligence of said Agri-Systems, plaintiff has been damaged.

- **Declaratory Relief**

In order to be granted the remedy declaratory relief, Plaintiff must set forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties and requests that these rights and duties be adjudicated by the court. (5 Witkin, Cal. Proc. 4th (1997) Plead, § 809, p. 264 .)

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

18
Plaintiff's Trial Brief

1    An actual controversy exists between Plaintiff, as the former trustee and presently the

2  plan agent of Coast Grain, and Agri-Systems regarding the parties' respective rights, duties and

3  responsibilities with regard to the 2000 and 2001 Contracts entered into by and between them as

4  amended, including the rights, duties and obligations of the parties under both the 2000 Contract

5  between them and the rights, duties and obligations under the 2001 Contract.

6    Additionally, an actual controversy has also arisen between Plaintiff, as the former trustee

7  and now plan agent of Coast Grain, and Agri-Systems regarding the parties' rights, duties and

8  responsibilities with respect to the Confidentiality Agreement.

9       **a.    Agri-Systems' Counter Claims**

10   In its Second Amended Counterclaim and Demand for Jury Trial Agri-Systems alleges

11 the following claims: breach of contract on two separate contracts as to Plaintiff, reasonable

12 value on the two separate contracts as to Plaintiff, account stated on the two separate contracts as

13 to Plaintiff, and demand for attorneys' fees as to Plaintiff.

14       •    **Breach of Contract**

15   To recover damages from Plaintiff for breach of contract, Agri-Systems must prove all of

16 the following: (1) That Coast Grain entered and Agri-Systems into a contract; (2) that Agri-

17 Systems did all, or substantially all of the significant things that the contract required it to do or

18 that it was excused from having to do those things; (3) that all conditions required for Coast

19 Grain's performance had occurred; (4) that Coast Grain failed to do something that the contract

20 required it to do; and (5) that Agri-Systems was harmed by that failure.

21   The measure of general damages for the breach of a contract is that amount which will

22 compensate the injured party for all the detriment or loss caused by the breach, or which in the

23 ordinary course of things, would be likely to result therefrom. The injured party should receive

24 those damages naturally arising from the breach, or those damages which might have been

25 reasonably contemplated or foreseen by both parties, at the time they made the contract, as the

26 probable result of the breach. As nearly as possible, the injured party should receive the

27 equivalent of the benefits of performance.

28

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1          • **Reasonable Value**

2          Agri-Systems seeks to recover damages by way of compensation for the reasonable value

3    of services performed pursuant to the 2000 Contract and 2001 Contract.

4          To recover on a claim for the reasonable value of services under a quantum meruit

5    theory, Agri-Systems must establish both that it was acting pursuant to either an express or

6    implied request for services from Plaintiff and that the services rendered were intended to and

7    did benefit Plaintiff.

8          • **Account Stated**

9          Agri-Systems claims that Plaintiff owes it money on an account stated. To establish this

10   claim, Agri-Systems must prove all of the following: (1) that Plaintiff owed Agri-Systems

11   money from previous financial transactions; (2) that Agri-Systems and Coast Grain, by words or

12   conduct, agreed that the amount stated in the account was the correct amount owed Agri-

13   Systems; (3) that Coast Grain, by words or conduct, promised to pay the stated amount to Agri-

14   Systems; (4) that Coast Grain has not paid Agri-Systems any/all of the amount owed under the

15   alleged account; and (5) the amount of money Coast Grain owes Agri-Systems.

16        i.    The Mechanic's Lien Foreclosure Action

17        In its mechanic's lien foreclosure action, Agri-Systems contends that it is owed one

18   million thirty thousand dollars ($1,030,000.00) under a written contract of March 31, 2000, and

19   seeks, among other things, to foreclose upon a mechanic's lien in that amount. Agri-Systems

20   also claims breach of contract.

21        • **Breach of Contract**

22        To recover damages from Plaintiff for breach of contract, Agri-Systems must prove all of

23   the following: (1) That Agri-Systems and Coast Grain entered into a contract; (2) that Agri-

24   Systems did all, or substantially all of the significant things that the contract required it to do or

25   that it was excused from having to do those things; (3) that all conditions required for Coast

26   Grain's performance had occurred; (4) that Coast Grain failed to do something that the contract

27   required it to do; and (5) that Agri-Systems was harmed by that failure.

28

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-0489

20
Plaintiff's Trial Brief

1   The measure of general damages for the breach of a contract is that amount which will
2   compensate the injured party for all the detriment or loss caused by the breach, or which in the
3   ordinary course of things, would be likely to result therefrom. The injured party should receive
4   those damages naturally arising from the breach, or those damages which might have been
5   reasonably contemplated or foreseen by both parties, at the time they made the contract, as the
6   probable result of the breach. As nearly as possible, the injured party should receive the
7   equivalent of the benefits of performance.

8   • **Reasonable Value and Enforcement of Mechanic's Lien**

9   Agri-Systems seeks to recover damages by way of compensation for the reasonable value
10  of services performed and seeks enforcement of its mechanic's lien.

11  To recover on a claim for the reasonable value of services under a quantum meruit
12  theory, Agri-Systems must establish both that it was acting pursuant to either an express or
13  implied request for services from Plaintiff and that the services rendered were intended to and
14  did benefit Plaintiff.

15  Under California law, a mechanic's lien is permitted only for the "reasonable value of the
16  labor, services, equipment or materials furnished, or for the price agreed upon by the claimant
17  and the person with whom he or she contracted, whichever is less." (Cal. Civ. Code, § 3123,
18  subd. (a); see also subd. (b).) In order to be able to assert a mechanics lien, the claimant must
19  have improved the property at the request of the owner, or the owner's actual agent, or a
20  statutory agent.

21  In the case of an unfinished project, the reasonable value must reflect the amount, or lack,
22  of progress made toward completion of the work. (*University Casework Sys. Inc. v. Sup. Ct.*
23  *(Jasper Constr. Inc.*), 41 Cal.App.3d 263, 267, 115 Cal.Rptr. 836, 839 (Cal. Ct. App. 1974).
24  Such reasonable value may also be offset by deficiencies in the work. See *Vila v. Riolo*, 183
25  Cal.App.2d 178, 179, 6 Cal.Rptr. 592, 593 (Cal. Ct. App. 1960).)

26  Furthermore, not all project costs are lienable. (*Primo Team Inc. v. Blake Construct. Co.,*
27  3 Cal.App.4th 801, 810-811, 4 Cal.Rptr.2d 701, 707 (Cal. Ct. App. 1992*); Lambert v. Sup. Ct.*
28  *(MacEwen*), 228 Cal.App.3d 383, 389, 279 Cal.Rptr. 32, 36 (Cal. Ct. App. 1991) (no lien for

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
FRESNO, CA 93792-9489
P. O. Box 9489
FRESNO, CA 93792-9489

21
Plaintiff's Trial Brief

1 consequential damages, and concerns regarding the claimant's use of the lien as leverage in
2 negotiations); see also Cal. Civ. Code, § 3106.) One common characteristic of lienable labor and
3 materials is that the contribution to the improvement must be of a permanent nature. (*Howard S.*
4 *Wright Construct. Co. v. Sup. Ct.* (BBIC Investors LLC), 106 Cal.App.4th 314, 324-325, 130
5 Cal.Rptr.2d 641, 650 (Cal. Ct. App. 2003); see also *Howard A. Deason & Co. v. Costa Tierra*
6 *Ltd.*, 2 Cal.App.3d 742, 753, 83 Cal.Rptr. 105, 113 (Cal. Ct. App. 1969) (stating that
7 "permanency of improvement is an essential characteristic of work giving rise to a lien.").)

8    Plaintiff disputes the value of the mechanic's lien herein.[4] Specifically, Plaintiff alleges
9 that Agri-Systems failed to timely complete the project, or at all. Plaintiff also contends that the
10 work provided by Agri-Systems failed to satisfy the quality contemplated in the agreement,
11 specifically, that numerous deficiencies exist in Agri-Systems' work and that any amounts owed
12 Agri-Systems (if at all, which Plaintiff denies) should be offset against the dollar value of such
13 deficiencies. Plaintiff further contends that the mechanic's lien recorded by Agri-Systems
14 improperly comprises certain non-lienable demobilization and interest costs that do not directly
15 benefit, or add value to, the project, and will seek an appropriate reduction in the lien amount at
16 trial.

17        • **Account Stated**

18    Agri-Systems claims that Plaintiff owes it money on an account stated. To establish this
19 claim, Agri-Systems must prove all of the following: (1) that Plaintiff owed Agri-Systems
20 money from previous financial transactions; (2) that Agri-Systems and Coast Grain, by words or
21 conduct, agreed that the amount stated in the account was the correct amount owed Agri-
22 Systems; (3) that Coast Grain, by words or conduct, promised to pay the stated amount to Agri-
23 Systems; (4) that Coast Grain has not paid Agri-Systems any/all of the amount owed under the
24 alleged account; and (5) the amount of money Coast Grain owes Agri-Systems.

25
26

27 [4] Plaintiff previously filed a motion for partial summary judgment on this issue. On December 8, 2005, the Court denied the
28 motion on the grounds that demobilization charges are not categorically excluded from a mechanic's lien, and must be reviewed on an individual basis. Order, p.15:5-10. Plaintiff is prepared to do so at trial.

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5200 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

22
Plaintiff's Trial Brief

1          • **Plaintiff asserts defenses, including the following:**

2          Rather than reciting the affirmative defenses contained both in Plaintiff's answer to Agri-

3    Systems' complaints and/or matters which were previously included in the Joint Pretrial

4    Conference Statement, Plaintiff's primary defenses to Agri-Systems' claims can be summarized

5    as follows:

6          (1)    Agri-Systems is not entitled to collect any monies on its 2000 contract

7    ($1 million+ claimed) or its 2001 contract ($2 million claimed) on the basis that Agri-Systems

8    failed to perform its work in accordance with the contract documents.  Agri-Systems breached

9    both express and implied warranties.  Agri-Systems failed to design and construct the facility in

10   accordance with the plans, generally-accepted industry standards, applicable building codes,

11   OSHA standards, and the like.

12         (2)    Plaintiff claims that the Coast Grain estate is entitled to a set-off against

13   Agri-Systems' claims for the following:

14                (a)    The remedial work performed to complete or correct Agri-

15   Systems' scope of work in the amount of approximately $500,000;

16                (b)    Liquidated damages as provided for in the second contract of just

17   less than $100,000; and

18                (c)    Estimated costs to remediate the substandard work performed by

19   Agri-Systems, estimated to be approximately $7 million.

20         While the Court has ordered in its partial summary judgment ruling that

21   Plaintiff may not seek reimbursement from Agri-Systems for estimated cost of repairs which

22   Plaintiff has not made to the facility (a ruling viewed to be incorrect and is being contested by

23   Plaintiff), clearly the law allows Plaintiff to offset its estimated cost of remediation against Agri-

24   Systems' claims.

25         As set forth more fully in Plaintiff's Motion for Clarification (Doc. No. 361), the

26   doctrine of substantial performance permits a party who has substantially performed under a

27   contract to sue on the contract, but permits the other party to reduce the amount otherwise due

28   under the contract to compensate for defects:

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

> At common law, recovery under a contract for work done was dependent upon *complete* performance, although hardship might be avoided by permitting recovery in *quantum meruit*. The prevailing doctrine today, which finds its application chiefly in building contracts, is that *substantial performance* is sufficient, and justifies an action on the contract, although the other party is entitled to a reduction in the amount called for by the contract, to compensate for the defects. What constitutes substantial performance is a question of fact, but it is essential that there be no wilful departure from the terms of the contract, and that the defects be such as may be easily remedied or compensated, so that the promisee may get practically what the contract calls for.
>
> 1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 818, p. 908, italics original.

"Application of the doctrine [of substantial performance] does not give the contractor the right to demand full performance from the other party; **the other party is entitled to a reduction in the contract price to compensate for whatever deficiencies exist**." (*Kossler v. Palm Springs Development, Ltd.*, 101 Cal.App.3d 88, 102) (Emphasis added.) It is well established under California case law that when a contractor proves substantial performance, the defendant is allowed an offset for deficiencies in the work. (*Patrick J. Ruane, Inc. v. Parker*, 185 Cal.App.2d 488, 503 (Cal. App. 1960) and cases cited therein.)

This offset also applies to actions to foreclose upon a mechanic's lien. Specifically, California Civil Code section 3123 provides, in part that:

> The liens provided for in this chapter shall be direct liens, and shall be for the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less... [I]n the event of rescission, abandonment, or breach of the contract, the amount of the lien may not exceed the reasonable value of the labor, services, equipment, and materials furnished by the claimant.

*See also Vowels v. Witt*, 149 Cal.App.2d 257, 263-264, 308 P.2d 415, 420 (Cal. Ct. App. 1957) (contractor only entitled to reasonable value of work completed). Therefore, under California law, Plaintiff is entitled to an offset for the deficiencies in the work performed by Defendant.

Plaintiff also contends that he should be permitted to introduce evidence concerning the full extent of defendant's defective work (including costs of repair) as part of Plaintiff's affirmative defense of offset. What constitutes fair and reasonable compensation is a question of fact generally left to the discretion of the jury. (*Seffert v. Los Angeles Transit Lines*, 56 Cal.2d 498, 506-507, 364 P.2d 337, 342 (Cal. 1961); *Abbott v. Taz Exp.*, 67 Cal.App.4th 853, 855, 79

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1 | Cal.Rptr.2d 360, 361 (Cal. Ct. App. 1998).) It is a fundamental policy under California law that

2 | a contracting party should receive the full "benefit of its bargain." (*Brandon & Tibbs v. George*

3 | *Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 455, 277 Cal.Rptr. 40, 47-48 (Cal. Ct. App.

4 | 1990).) To determine such full benefit herein, particularly in the offset context, the jury must

5 | consider the estimated and unexpended costs of repair, and not merely the Project's diminution

6 | in value.

7 |      Moreover, in a suit for breach of contract, an owner may recover the estimated cost of

8 | repairing a contractor's defective work, even when the owner has no "personal reason" to make

9 | the repairs. A property owner may recover his estimated costs of repair, even though the

10 | property owner has no "personal reason" for expending such costs. *Greenwald v. Royal Indemn.*

11 | *Co.*, 112 Cal.App.2d 183, 245 P.2d 1115 (Cal. Ct. App. 1952). In *Greenwald*, an owner and

12 | general contractor entered into a contract for the construction of a commercial building. *Id.* at

13 | 184. The owner subsequently brought an action against the contractor for defective workmanship

14 | and failure to comply with the plans and specifications. *Id.* Both the trial and appellate courts

15 | held that the owner could recover the estimated costs of repair, even though such cost in some

16 | instances equaled the cost of doing the work in the first place. Specifically, in affirming the

17 | judgment over the contractor's objections, the appellate court recognized that:

> 18 | [I]t would cost as much to remove the poor plaster and replaster the walls as it
> 19 | had cost to do the actual plastering itself. The [lower] court's allowance was for
> the sum reasonably required to have the work corrected and repainted. **The fact**
> **that respondents did not have the work corrected affords no basis for**
> 20 | **denying them recovery for admittedly unsatisfactory work.** *Id.* at 185,
> emphasis added.

21 | 

22 | California law also permits the recovery of estimated (unexpended) costs in several

23 | analogous situations. For example, in *Fairlane Estates Inc. v. Carrico Constr. Co.*, 228

24 | Cal.App.2d 65, 39 Cal.Rptr. 35 (Cal. Ct. App. 1964), an owner entered into a contract with a

25 | general contractor to subdivide and improve certain real property. *Id.* at 66. In ruling upon a

26 | subsequent action by the owner against the contractor, the appellate court held that:

> 27 | The measure of damages applied by the [lower] court on account of the
> defendants' failure to perform was the difference between the aforesaid
> amounts, viz., the contract price and the price of completing the work the
> 28 | defendants agreed to perform. This is proper... Although the defendants
> inferentially contend to the contrary, the plaintiff was entitled to recover

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5280 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

25
Plaintiff's Trial Brief

1              damages from them for their breach of the contract even though it had not
           completed the work in question." *Id.* at 72-73. (Internal citations omitted.)

2

3   *See also Camrosa County Water Dist. v. Southwest Welding & Mfg. Co.*, 49 Cal.App.3d 951,

4   956, 123 Cal.Rptr. 93, 95 (Cal. Ct. App. 1975) (recovery of estimated cost of repairing defective

5   fixtures); Cal. Civ. Code, § 3260, *Denver D. Darling, Inc. v. Controlled Environ. Constr., Inc.*,

6   89 Cal.App.4th 1221, 108 Cal.Rptr.2d 213 (Cal. Ct. App. 2001) (withholding of estimated value

7   of dispute from contract payment).

8         Limiting Plaintiff's offset to diminution in value does not provide Plaintiff with the full

9   benefit of Coast Grain's bargain. Instead, it provides Defendant with a windfall based on

10   extrinsic circumstances and events. As indicated in Plaintiff's opposition to Defendant's motion

11   for partial summary judgment, the trend in California law disfavors diminution in value as a

12   theory of recovery.

13            In light of recent California decisions, it appears the courts are resolving the
         conflict between the standards of defect damages (cost of repair versus diminution

14            in value) in favor of cost of repair, <u>regardless of whichever is less</u>. Given the
         continued import of *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*,

15            114 Cal. App. 3d 783; 171 Cal.Rptr. 334 (1981) [cost of repair], and the
         decertification of *McKinney v. Christiana Community Guilders*, 229 Cal. App. 3d.

16            611, 280 Cal.Rptr. 242 (1991) [diminution in value], California courts appear to
         be adopting cost of repair as the standard measure of damages in defect litigation.

17

18            Thomas E. Miller, Cal. Construction Defect Litigation: Residential and
         Commercial § 10.3 (1999 Cumulative Supplement) (Emphasis part of original

19            citation).

20         The shortcomings of diminution in value as a theory of recovery may be demonstrated by

21   the following scenarios:

22         First, parties' lack of knowledge at the time the property is re-sold to third parties, and the

23   conditions of sale, improperly affect any measurement of diminution in value. For example, if

24   the property contains latent defects, and is sold to a third party "as is," the sale price does not

25   accurately reflect the true value of the property – instead, because the full extent of the defects is

26   unknown at the time, the property is, at best, guesswork. Furthermore, since the property is sold

27   "as is," the claims do not pass to the buyer. Such a situation would result in a windfall for the

28   contractor, since he receives the full balance of the contract price despite his failure to properly

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1  perform the contract terms. The buyer of the property is left without recourse, since the property
2  was purchased "as is." The seller of the property is likewise left without recourse, since there is
3  no diminution in value as a result of the contractor's defective work.

4       Second, diminution in value is susceptible to extrinsic and unrelated market effects, such
5  as industry events or fluctuations in real estate prices. For example, a party owns a parcel of real
6  property worth $1,000,000.00, and retains a contractor to construct an improvement worth
7  $300,000.00 (which, if the improvement is constructed without defects, would result in a total
8  property value of $1,300,000.00). It is subsequently discovered that the improvement suffers
9  from substantial defects totaling $100,000.00. However, prior to litigation, and due to rising real
10 estate prices, the value of the real property (empty lot) increases to $1,500,000.00, resulting in a
11 total property value (land plus defective improvement) of $1,700,000.00 – an increase in value of
12 $400,000.00, despite the existing defects. This increase subsumes the contractor's defective
13 workmanship of $100,000.00, glosses over the prior existing diminution in value, and allows the
14 contractor to enjoy a windfall based upon wholly random and unrelated events.

15      Both of these examples are applicable to the present circumstances. Here, the Project was
16 sold to a third party "as is," without the parties' full knowledge as to the scope of defects. The
17 full extent of such defects was not discovered until after the Project had been sold. Because of
18 the particular conditions of sale, the third party cannot bring an action against Defendant for the
19 latter's defective work. Furthermore, even Defendant concedes that extrinsic and unrelated
20 market effects have increased the value of the Project – that "[t]he Project sold for as much as it
21 was worth *if perfect* due to circumstances for which [Defendant] was not responsible in fact or
22 law." Defendant's P&A in Support of its Motion for Partial Summary Judgment, p. 21:5-7
23 (Emphasis part of Defendant's language.) Thus, to limit Plaintiff's recovery herein to diminution
24 in value would result in a windfall to Defendant, and permit Defendant to escape liability for its
25 defective work – while still permitting Defendant to collect the full contract price for such work.

26      Plaintiff notes that the Court is concerned that recovery of the unexpended cost of repair
27 would constitute a "double recovery." However, permitting Plaintiff to present evidence of the
28 estimated cost of repair would not effect a "double recovery," since the Project was sold "as is,"

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

27
Plaintiff's Trial Brief

1  the price thereof was most likely reduced accordingly; and any cost of repair in excess of

2  Defendant's claim would not result in any affirmative recovery for Plaintiff.

3      There is minimal danger of that here. Specifically, the Project was sold pursuant to an

4  order of the United States Bankruptcy Court. The bankruptcy resulted, at least in part, from

5  Defendant's failure to construct the Project in a timely and non-defective manner, which

6  prevented Coast Grain from capitalizing on trends in the grain market. Furthermore, the Project

7  sale price was significantly reduced in four respects:

8      (1)   At the time of sale, Plaintiff was already involved in litigation with Defendant
            concerning the latter's defective workmanship on the Project. Such fact of
9            litigation, and the grounds therefore, were matters of public knowledge.

10     (2)   Third parties interested in purchasing the Project were required to conduct their
            own investigations concerning the defects therein. Such responsibility, the strong
11           probability that additional defects existed (which they did), and the fact that many
            of the defects were latent, most likely affected the bids, and bid amounts, for the
12           Project.

13     (3)   The Project was sold pursuant to an order of the United States Bankruptcy Court,
            which most likely meant that the Project was sold for a 'fire sale' price.

14
       (4)   Plaintiff sold the Project "as is," and expressly retained all of bankruptcy estate's
15           claims against Defendant. This meant that the purchaser would not be able to
            bring an action against Defendant for the cost of repairing any patent or latent
16           defects. Such limitation most likely reduced the bids, and bid amounts, for the
            Project.
17

18     Furthermore, California Civil Code section 3260 provides statutory authority for

19  withholding monies from a contractor based upon the **estimated** costs of repairs, not the repairs

20  actually made. *See also, Denver D. Darling, Inc., supra,* 89 Cal.App.4th 1221 (contractor

21  withheld estimated value of disputed amount from contract payment). Here, Coast Grain

22  withheld monies from Defendant based on the value of potential corrective efforts.

23     Thus, permitting Plaintiff to present evidence of its full estimated cost of repair would not

24  constitute a "double recovery," since the Project was significantly devalued due to Defendant's

25  actions and the particular events arising therefrom, and Plaintiff's offset claim cannot result in an

26  affirmative recovery.

27  ///

28  ///

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P.O. Box 9489
FRESNO, CA 93792-9489

28
Plaintiff's Trial Brief

1    i.    Additional Contract Issues

2    •    **"Cancellation" of the 2000 Contract Does Not Bar Plaintiff From Seeking**
3    **Recovery of Damages.**

4        As the Court determined in its partial summary judgment ruling (Doc. 355), the fact that
5    Agri-Systems unilaterally "terminated" the 2000 contract in September 2001 and/or the fact that
6    the parties allegedly "canceled" the first contract in executing the 2001 contract. This did not
7    result in a waiver, release or forfeiture of Plaintiff's claims for expended remedial work, nor does
8    the "cancellation" of the first contract in any way bar Plaintiff from offsetting its estimated cost
9    of repairs against Agri-Systems' claims under both the first and second contracts.

10    ii.    Jury and Non-Jury Issues

11        Plaintiff contests Agri-Systems' jury demand as to the First Claim for Relief (Avoidable
12    Preferential Transfers) the Second Claim for Relief (Avoidable Fraudulent Transfer), the Third
13    Claim for Relief (to Determine Nature, Extent and Validity of Liens) and the Fourth Claim for
14    Relief (Objection to and Disallowance of Claims). Plaintiff asserts Agri-Systems is not entitled
15    to a jury on those claims. Additionally, Plaintiff claims that Agri-Systems has waived any right
16    to a jury trial by filing proofs of claim in Coast Grain's bankruptcy.

17        The right to a jury trial in civil cases is determined by the Seventh Amendment. In
18    *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33 (1989), the Supreme Court examined the extent of
19    the Seventh Amendment right to jury trial in a civil case in the context of bankruptcy
20    proceedings. The Seventh Amendment grants the right of jury trial only to "suits at common
21    law," which the *Granfinanciera* interpreted as meaning cases involving legal rights. "No jury
22    right attaches to equitable claims." (*Billing v. Ravin, Greenberg & Zackin*, 22 F.3d 1242, 1245
23    (3rd Cir. 1994) (citing *Granfinanciera* 492 U.S. at 41).) The *Granfinanciera* court set forth a
24    three-part test to determine whether a Seventh Amendment trial exists in a particular action:

25        First, we compare the statutory action to 18th – century actions brought
        in the courts of England prior to the merger of the courts of law and
26        equity.   Second, we examine the remedy sought and determine
        whether it is legal or equitable in nature. The second stage of this
27        analysis is more important than the first. If, on the balance, these two
        factors indicate that a party is entitled to a jury trial under the Seventh
28        Amendment, we must decide whether Congress may assign and has
        assigned resolution of the relevant claim to a non-Article III

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

1     adjudicative body that does not use a jury as fact finder.

2  *(Id.* at 42.)

3     Actions sounding in tort or actions seeking money damages for a breach of contract are

4  generally considered actions at law. *(Billing,* 22 F.3d at 1245.) On the other hand, "actions to

5  determine the non-dischargeability of debts fail the second prong of [the *Granfinanciera*] test

6  because such proceedings are equitable in nature. Bankruptcy litigants therefore have no

7  Seventh Amendment right to a jury trial in dischargeability proceedings." *(American Express*

8  *Travel Related Serv. Co., Inc. v. Hashemi,* 104 f.3D 1122, 1124 (9 Cir. 1997) ("*Hashemi*").)

9     The issue that the *Granfinanciera* court directly addressed, and that arises in Plaintiff's

10 Adversary Proceeding action in this case, is whether the defendant in an action by a bankruptcy

11 trustee to avoid and/or recover a fraudulent transfer is entitled to a jury trial under the Seventh

12 Amendment. (See *Granfinanciera,* 492 U.S. at 36.)  Significantly, in *Granfinanciera,* the

13 defendant in the action to avoid the fraudulent transfer had <u>not</u> filed a claim against the

14 bankruptcy estate. *(Id.)* The Court held that an action to avoid fraudulent transfer was legal in

15 nature, *Id.* at 47-48; and that a defendant in such an action is entitled to jury trial under the

16 Seventh Amendment "notwithstanding Congress" designation of fraudulent conveyance actions

17 as 'core proceedings' in 28 U.S.C. § 157(b)(2)(H)." *(Id.* at 36.)

18    In *Langenkamp v. Culp,* 498 U.S. 42 (1990), the Supreme Court clarified its holding in

19 *Granfinanciera* by addressing directly the issue of whether the Seventh Amendment right to jury

20 trial applies where creditors who submit a claim against a bankruptcy estate and who are then

21 "sued by the trustee in bankruptcy to recover allegedly preferential monetary transfers are

22 entitled to a jury trial under the Seventh Amendment." *(Id.* at 42-43.) The *Langenkamp* Court

23 reasoned its holding as follows:

24          In *Granfinanciera* we recognized that by filing a claim against a
            bankruptcy estate the creditor triggers the process of "allowance and
25          disallowance of claims," thereby subjecting himself to the bankruptcy
            court's equitable power. [Citations.] If the creditor is met, in turn, with a
26          preference action from the trustee, that action becomes part of the claims-
            allowance process which is triable only in equity. [Citation.] In other
27          words, the creditor's claim and the ensuing preference action by the
            trustee become integral to the restructuring of the debtor-creditor
28          relationship through the bankruptcy court's *equity jurisdiction.*
            [Citation.] As such, there is no Seventh Amendment right to a jury trial.

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

> If a party *does not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial. [Citation.] ¶ Accordingly, "a creditor's right to a jury trial on a bankruptcy preference claim depends upon whether the creditor has submitted a claim against the estate." [Citation.]

(*Langenkamp*, 498 U.S. at 44-45 (citations omitted, emphasis in orignal).)

The Ninth Circuit has held that "a bankruptcy litigant waives his right to a jury trial in proceedings 'vital to the bankruptcy process of allowance and disallowance of . . .claims." [Citation.]" (*Hashemi,* 104 F.3d at 1125 (quoting *Benedor Corp. v. Conejo Enterprises, Inc.*, 96 F.3d 346, 354 n.6 (9th Cir. 1996)).)

In reviewing Plaintiff's Adversary Proceeding it is clear that all the claims are to avoid and recover preference payments or to avoid and recover fraudulent transfers. As such, they are claims identical to those considered in *Granfinanciera* and *Langenkamp*. Thus, Agri-Systems has waived any right to a jury trial by filing proofs of claim in Coast Grain's bankruptcy.

Agri-Systems is not entitled to a jury trial on Plaintiff's Adversary Proceeding claims. In the interest of efficiency and for purposes of streamlining the trial, Plaintiff proposes that the Court permit the jury to hear evidence on all claims but that the Court determine all claims in the Adversary Proceedings.

iii. <u>The Bankruptcy Court Adversary Proceeding</u>

Plaintiff also seeks relief based on the following provisions of the Bankruptcy Code:

- **Avoidable Preferential Transfers**

Section 547 of the Bankruptcy Code provides for the recovery of transfers, including payments: 1) made by a debtor within 90 days of its bankruptcy; 2) to or for the benefit of a creditor; 3) for or on account of an antecedent debt, owed by the debtor before the transfer or payment was made; 4) that enables the creditor to receive more than they would receive if the case were under Chapter 7, if the transfer had not been made, and such creditor received payment of such debt to the extent provided by the provisions of the bankruptcy code. (11 U.S.C. § 547.) Section 550 permits the debtor (or trustee) to recover the property transferred or the value of the payments/transfers made.

LAW OFFICES
Kimble, MacMichael & Upton
A Professional Corporation
5260 North Palm Avenue
Suite 221
P. O. Box 9489
Fresno, CA 93792-9489

1      • **Avoidable Fraudulent Transfers**

2      Section 548 of the Bankruptcy Code provides for the recovery of any interests of debtor

3   in property made within one year of the filing of the bankruptcy petition if the debtor voluntarily

4   or involuntarily: (A) made such transfer or incurred such obligation with actual intent to hinder,

5   delay, or defraud any entity to which the debtor was or became, on or after the date that such

6   transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a

7   reasonably equivalent value in exchange for such transfer or obligation; and was insolvent on the

8   date that such transfer was made or such obligation was incurred, or became insolvent as a result

9   of such transfer or obligation; (ii) (I) was insolvent on the date that such transfer was made or

10   such obligation was incurred, or became insolvent as a result of such transfer obligation; (II) was

11   engaged in business or transaction, or was about to engage in business or transaction, for which

12   any property remaining with the debtor was an unreasonably small capital; or (III) intended to

13   incur or believed that the debtor would incur, debts that would be beyond the debtor's ability to

14   pay as such debts matured. (11 U.S.C. § 548.)

15      • **Determination of Nature, Extent and Validity of Liens**

16      Section 363 of the Bankruptcy Code permits a bankruptcy trustee and/or plan agent to

17   use, sell or lease property out of the ordinary course of business with court approval.  As here, a

18   plan agent may seek declaratory relief to determine the nature, extent and validity of any liens

19   encumbering property of the bankruptcy estate.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 221
P. O. Box 9489
FRESNO, CA 93792-9489

32
Plaintiff's Trial Brief

1  • **Objection to Disallowance of Claims**

2      Section 502 of the Bankruptcy Code provides the mechanism for objecting to claims filed

3  in a bankruptcy case.  Section 502(b) provides a non-exclusive list of bases for objections to

4  claims.  Section 502(d) requires the court to disallow the claim of any party to the extent that

5  property is recoverable from such party due to their receipt of avoidable transfers under Sections

6  542, 543, 550, or 553 of the Bankruptcy Code.  Such claims will remain disallowed until the

7  avoided transfers or payments are repaid.

8  Dated: May 22, 2006.

9                                  KIMBLE, MacMICHAEL & UPTON
                                   A Professional Corporation
10

11
                                   By: _____
12                                     STEVEN D. McGEE
                                   Attorney for Plaintiff/Counter-Defendant
13                                 GREG BRAUN, Plan Agent for
                                   COAST GRAIN COMPANY
14

28  1000702.102.246.trialbrf10506.3

LAW OFFICES
Kimble, MacMichael
& Upton
A PROFESSIONAL CORPORATION
5260 NORTH PALM AVENUE
SUITE 224
P. O. BOX 9489
FRESNO, CA 93792-9489