Henry D. Nunez, Esq. #63412
Law Offices of Henry D. Nunez
4478 West Spaatz Ave.
Fresno, CA 93722
Telephone: (559) 437-9200

Mark D. Parker, Esq.
Parker, Heitz & Cosgrove
P.O. Box 7212
Billings, MT 59103-7212

Jon E. Doak, Esq.
Doak & Associates, P.C.
P.O. Box 1875
Billings, MT 59103-1875

Attorneys for Defendant Agri-Systems

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| **GREG BRAUN, Chapter 11 Trustee for COAST GRAIN COMPANY, a California Corporation,**<br><br>Plaintiff,<br><br>-vs-<br><br>**AGRI-SYSTEMS, a Montana corporation,**<br><br>Defendant. | Case No. CIV-F-02-6482-AWI-LJO<br><br>*AGRI-SYSTEMS' TRIAL BRIEF*<br><br><br><br><br><br>*Jury Trial*<br>*Date:  June 6, 2006*<br>*Time:  9:00 A.M.*<br>*Courtroom:   2*<br>*Judge:  Hon. Anthony W. Ishii* |

## TRIAL BRIEF OF AGRI-SYSTEMS

Comes now Defendant/Counterclaimant AGRI-SYSTEMS, a Montana corporation ("Agri-Systems"), and submits the following Trial Brief; incorporating herein the arguments of law set forth in Agri-Systems' Memorandum in Support of Motion for Partial Summary Judgment filed March 3, 2006.

1

## I.  FACTUAL BACKGROUND

Agri-Systems incorporates by this reference the factual and procedural background set forth in Agri-Systems Memorandum in Support of Motion for Partial Summary Judgment, filed on about March 3, 2006; and Statement of Undisputed Material Facts filed therewith. On about November 27, 2002, Plaintiff Greg Braun, as Chapter 11 Trustee of the Coast Grain Company ("Plaintiff" or "Braun") filed his complaint in the above action for breach of contract, breach of express and implied warranty, negligence, breach of confidentiality agreement, and for declaratory judgment. The Plaintiff's Complaint has never been amended. On about December 4, 2002, Plaintiff filed an adversary complaint against Agri-Systems in the Coast Grain bankruptcy, alleging that the mechanic's lien filed by Agri-Systems on Coast's Madera property in August, 2001, the $500,000 downpayment and the note and deed of trust on the Madera property granted Agri-Systems on about October 15, 2001 under the October, 2001 Contract between Agri-Systems and Coast Grain were all "preferences" avoidable under 11 U.S.C. §547; that the $500,000 payment and deed of trust were "fraudulent conveyances" by Coast, avoidable under 11 U.S.C. §548; and that Agri-Systems' claims against the Coast bankruptcy must be disallowed.

Plaintiff was appointed Chapter 11 Trustee of the Coast Estate on about March 12, 2002. In May, 2002, Plaintiff sought and was granted approval by the Coast bankruptcy court to retain Mccarthy & Co. of Omaha, NB to list and market Coast's Madera property. On about August 20, 2002, two months after Mccarthy began marketing efforts, an independent appraisal of the Madera property was done by the Bank of America. The appraised value of the Madera Feed Mill is <u>Five Million Dollars </u>($5,000,000.00). The report states that the grain mill would not be a maximally profitable use for land, due to the marginal returns and very competitive nature of the industry according to industry personnel and appraisers contacted.

By agreement executed on about March 28, 2003, Plaintiff agreed to sell the property to Pacific Ethanol, Inc. "as is," without warranty, for $5,100,000.00. The sale closed on about June 20, 2003. Agri-Systems mechanics lien and deed of trust attached to the proceeds of the sale. The two

liens consist of the mechanics lien for $1,030,000.00 and the deed of trust for $2,000,000.00. Pacific purchased the property for use as an ethanol plant. Following such due diligence inspections as Pacific desired, Pacific was not aware of the material defects alleged by Plaintiff in this action, and Plaintiff has neither offered nor proposed to offer at trial any evidence such alleged defects had any affect whatsoever on the sale price of the Madera Facility.

Plaintiff received the highest and best price for the Madera property when it sold; receiving the fair market value of $5.1 million dollars on the sale. Plaintiff instituted a plan of liquidation, with no intention of operating the plant. The Court has held in its May 15, 2006 Memorandum and Order on Agri-Systems' Motion for Partial Summary Judgment that Plaintiff may not recover nor introduce evidence on estimated costs to repair alleged defects or deficiencies in the Madera facility that Plaintiff did not and will never incur.

## II. FACTUAL ALLEGATIONS OF PLAINTIFF'S COMPLAINT TO AVOID PREFERENTIAL TRANSFER.

Plaintiff is seeking to avoid the recordation of Agri-Systems's deed of trust and mechanic's lien, in his adversary claims. Plaintiff misidentifies three alleged transfers: (1) the recordation of the mechanic's lien on August 24, 2001; (2) the recordation of the deed of trust on October 15, 2001; and (3) the payment of $500,000.00 to Agri-Systems October 15, 2001 under the October, 2001 Contract. Plaintiff never plead any other alleged "preferential transfers" in his adversary complaint. Plaintiff contends that the foregoing three transfers are preferences under section 547[1]. Plaintiff also asserts that the recordation of the deed of trust on October 14, 2001 and advance of $500,000.00 are avoidable under section 548; and contends Tom O'Brien and Steve Boren did not have corporate authority to execute the deed of trust, nor (implicitly) to execute the October, 2001 Contract for Coast Grain.

## III. BOREN AND O'BRIEN HAD AUTHORITY TO BIND COAST GRAIN

As an initial issue, Plaintiff argues that the deed of trust and security agreement executed pursuant to the October, 2001 Contract were invalid because Thomas O'Brien and Steve Boren, officers of Coast Grain at the time, did not have authority to sign such instruments nor implicitly

---

[1] Unless otherwise indicated, all statutory references will be from the Title 11.

3

authority to sign the second construction agreement with Agri-Systems.  The argument is frivolous. It is well-established in California law that an officer has the authority to bind his or her corporation. *Campbell* v. *Handford* (1924) 67 Cal.App. 155, 162.  Even if O'Brien and/or Boren did not have actual authority to bind Coast Grain, this lack of authority was not actually known to the principals of Agri-Systems at the time the October, 2001 Contract was negotiated and it is not a valid ground of invalidation of the contract.  *Snukal* v. *Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 787. The October, 2001 Contract and the documents executed and delivered in accordance therewith are valid and Coast Grain, as debtor in possession, and Plaintiff as Coast's successor, is bound thereby.

### IV. RECORDATION OF DEED OF TRUST CANNOT BE AVOIDED AS A PREFERENCE BECAUSE A CONTEMPORANEOUS EXCHANGE FOR NEW VALUE.

A bankruptcy trustee cannot avoid a transfer the extent that such transfer was:

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and [was]

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. §547(c)(1).

Under 11 U.S.C. §547, "new value" is defined as follows:

"new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation; ....

11 U.S.C. §547(a)(2).

"New value" does not consist of "esoteric or intangible benefits" but instead "must actually and in real terms enhance the worth of the debtor's estate so as to offset the reduction in the estate that the transfer caused." *In re Adelphia Automatic Sprinkler Co.*, 184 B.R. 224, 228 (E.D. Pa. 1995).

Here, in exchange for receiving a note and deed of trust in the sum of $2,000,000.00, Agri-Systems provided "new value" to Coast Grain and the Coast Grain Estate in the form of assumption of tasks that had been Coast Grain's under the March, 2000 Contract, and expressly outside the scope of

4

Agri-Systems' responsibilities in connection with completion of the Madera facility. Plaintiff's own witnesses, and proposed trial exhibits, show that Coast estimated the cost to perform such tasks, for which Agri-Systems had no responsibility, to be approximately $2.5 million. Agri-Systems' promise to perform and subsequent performance of such tasks rendered saleable a facility which Coast could not sell as of October 14, 2001. The "new value" injected by Agri-Systems through its work after October 14, 2001 greatly enhanced the estate. As the direct result of Agri-Systems work under the October 14, 2001 agreement, Plaintiff possessed a grain facility which he estimated would be worth $8,000,000.00 with a certificate of occupancy; and which Coast's management estimated would be worth between $2.5 and $4 million without such certificate. The October, 2001 downpayment, note and deed of trust fall within the exception; and Plaintiff does not state a claim for relief under Section 547.

### V. PAYMENT OF $500,000.00 CANNOT BE AVOIDED AS A PREFERENCE BECAUSE THIS TRANSFER WAS CONTEMPORANEOUS EXCHANGE FOR NEW VALUE.

Moreover, Coast Grain's advancement of $500,000.00 cannot be avoided as a preference because it satisfies the elements of section 547(c)(1). On October 15, 2001 in order to establish the "new value" exception, the creditor must show (1) that he or she gave new value; and (2) after the alleged preferential transfer. *In re IRFM, Inc.*, 52 F.3d 228, 230 (9th Cir. 1995).

Just as with the deed of trust, in exchange for receiving $500,000.00, Agri-Systems provided "new value" to the debtor in possession in the form of services in the completion of the grain processing facility located in Madera, California. Measured as of the date of delivery of the $500,000 downpayment to Agri-Systems in consideration of Agri-Systems promise to assume new tasks and new risks, the Coast Estate anticipated receipt of a certificate of occupancy that would make the facility worth an estimated $8,000,000.00 on resale.

### VI. THE MECHANICS LIEN IS A STATUTORY LIEN WHICH CANNOT BE AVOIDED.

A statutory lien is defined as that lien

> arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest
> or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute; ...

5

11 U.S.C. §101(53).

Plaintiff contends that Agri-Systems' mechanic's lien, recorded on August 24, 2001, is a preference. Agri-Systems submits it is a "statutory lien," which is excepted from the operation of the preference laws under section 547(c)(6). Therefore, the Trustee does not state a cause of action for avoidance of a preference and his claim for relief must be dismissed under FRBP 7012(6).

The exception found in section 547(c)(6) is specifically intended for mechanics. Ahern, ed., Bankr. Jury Instructions (2001 ed.) §14.62, p. 270. The overwhelming weight of authority holds that a mechanics' lien is a "statutory lien" which cannot generally be avoided. *See In re APC Construction, Inc.*, 136 B.R. 690 (D. Vt 1991); *In re Saberman*, 3 B.R. 316, 318 (Bky. N.D. Ill 1980); *In re Jennison-Wright Corp.*, 111 B.R. 146, 148(Bky. N.D.Oh 1990); *In re Petroleum Piping Contractors, Inc.*, 211 B.R. 290 (N.D. Ill 1997). In accordance with this majority view, this is the rule of the Ninth Circuit. *See In re Nucorp Energy*, 902 F.2d 729, 733 (9th Cir. 1990).

A duly recorded mechanic's lien, as here, cannot be avoided as a preference. *In re Severson Acres Development Corp.*, 142 B.R. 59 (Bky N.D.N.Y. 1992). The only qualification to this rule is where the mechanic's lien can be avoided under section 545 as a statutory lien which was un perfected at the time of the filing of the petition. *In re Clausson*, 118 B.R. 1009, 1017 (Bky. D.S.D. 1990). In this instance, Agri-Systems' lien cannot be avoided under section 545, because Agri-Systems both recorded its mechanic's lien and filed a state court lawsuit before the filing of the involuntary petition against Coast Grain. Therefore, Plaintiff's adversary claim to avoid the mechanic's lien does not state a claim for relief under section 547.

**VII. PLAINTIFF IS NOT ENTITLED TO LIQUIDATED DAMAGES BECAUSE AGRI-SYSTEMS WAS NOT SOLE CAUSE OF DELAY IN ISSUANCE OF THE CERTIFICATE OF OCCUPANCY**

Liquidated damages may be recoverable where from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. Cal. Civ. Code, § 1671. Provisions for liquidated damages are most generally recognized with respect to the delays caused by construction

6

contracts.  See *London Guar. & Acc. Co.* v. *Las Lomitas School Dist.* (1961) 191 Cal.App.2d 423, 427. The estimated completion date of a project may be waived by the contracting parties.  <u>See</u> *Maurice L. Bein, Inc.* v. *Housing Authority* (1958) 157 Cal.App.2d 670, 681 - 682.  Specifically, a claim for liquidated damages may be waived through the conduct of the parties. *Bilardi Constr., Inc.* v. *Spencer* (1970) 6 Cal.App.3d 771, 786.

It is well established according to State law that an owner is not entitled to delay penalties or liquidated damages if the cause of the delay was not due to the fault of the contractor.  <u>See</u> *Gogo* v. *Los Angeles County Flood Control District* (1941) 45 Cal.App.2d 334, 343 - 344; *Vrgora* v. *Los Angeles Unified School District* (1984) 152 Cal.App.3d 1178, 1187.  In addition, an owner is not entitled to liquidated damages when the delay is due to the mutual fault of the owner and contractor. *Jasper Construction, Inc.* v. *Foothill Junior College District* (1979) 91 Cal.App.3d 1, 13.

Here, if there has been any delay in the issuance of certificates of occupancy for the Madera property after Agri-Systems tendered its work under the October, 2001 Contract, such delay is due to Plaintiff's failure to timely pay permit fees required by Madera County and to the time required for completion of WEM start-up, both items outside the scope of Agri-Systems' responsibilities under the October, 2001 Contract. Moreover, the urgency for completion of the work which existed on October 14, 2001 when the October, 2001 Contract was executed was gone by the time Plaintiff was appointed Chapter 11 Trustee as the facility was to be sold, at auction, to the highest bidder; and no bids acceptable to Plaintiff were received until late 2002. Neither Plaintiff nor the Coast Estate suffered any detriment whatsoever due to delay in completion of Agri-Systems' work under the second contract.

**IX.   THE OCTOBER, 2001 CONSTRUCTION CONTRACT WAS AN EXECUTORY CONTRACT WHICH PLAINTIFF REJECTED BY THE CONFIRMED CHAPTER 11 PLAN.**

The Ninth Circuit follows the Countryman definition of an executory contract.  According to that definition, an executory contract is one in which (1) performance remains due to some extent by both sides and (2) the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse performance of the other. *In re Robert L. Helms Constr. Co., Inc.*, 130 F.3d 702, 705 (9th Cir.  1998).

7

There is no question that the October, 2001 construction contract was "executory" within the meaning of this definition as of the petition date. Agri-Systems had responsibilities for completion of tasks necessary for issuance of a certificate of occupancy. In addition to its payment obligations to Agri-Systems, Coast Grain remained responsible for (i) providing specified liquids tanks, (ii) payment of permit fees, and (iii) supplying WEM components and WEM start-up of the Madera facilities. Performance remained due by both parties. Plaintiff has alleged that Agri-Systems failed to complete its work under the October, 2001 Contract, notwithstanding it is undisputed Agri-Systems had been and was continuing to assist Plaintiff with plant start-up, and was addressing "punchlist" items as raised by Plaintff. Plaintiff then filed his complaint in this action, seeking a declaration that Plaintiff had no further obligations under the contract; followed by Plaintiff's adversary complaint wherein Plaintiff alleged the consideration under the October, 2001 Contract, and implicitly the entire contract were void. Plaintiff repudiated any obligations under the October, 2001 Contract, while simultaneously asserting that Agri-Systems' obligations to perform continued.

On June 5, 2003, over the objections of Agri-Systems, the Court granted Plaintiff's motion to sell the Madera property. Plaintiff's application to sell the property did not provide for the assumption or rejection of the construction contract. Even assuming *arguendo* that Agri-Systems still had obligations under the October, 2001 Contract, Plaintiff's sale of the property forever prevented such performance.

In October, 2003, Plaintiff's Third Amended Chapter 11 Plan of Liquidation was confirmed by the Coast bankruptcy court. The plan provided that contracts not affirmatively assumed were deemed rejected. No contract or agreement between Agri-Systems and Coast Grain was assumed.

The acceptance of an executory contract must be affirmatively indicated prior to Confirmation, or it will be deemed rejected. 11 U.S.C. § 365(d)(2). Here, Coast Grain undertook no action to assume or reject the October, 2001 construction contract which was clearly executory as of the Coast petition date, nor any other agreement with Agri-Systems.

The bankruptcy code sets forth with specificity the legal consequences to the debtor or trustee

of rejection of a contract that was executory as of the petition date. Under 11 U.S.C. §365(g), the Trustee's failure to assume a contract in accordance with such section is deemed a breach by Coast Grain of such unassumed contract as of the day immediately preceding the filing of the Coast bankruptcy petition. *See* 1 Collier Bankruptcy Manual §365.05 (3d ed. 1993). The consequences of such breach are determined by state law. *See Blackburn v. Sec. Pac. Credit Corp. (In re Blackburn)*, 19 C.B.C. 2d 604 (Bankr. S.D. Cal. 1988).

Respectfully submitted,

By: /s/ Jon E. Doak
Jon E. Doak, Esq.

By: /s/ Henry D. Nunez
Henry D. Nunez

By: /s/ Mark D. Parker
Mark D. Parker
Attorneys for Agri-Systems

### CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of Billings, Montana; I am over the age of eighteen years and not a party to the above entitled action; and my business address is 100 North 27th Street; Suite 200, Billings, Montana 59101. I am readily familiar with service by email and the electronic case filing (ECF) systems in the Federal Courts.

On May 22, 2006 true and correct copies of the foregoing ***AGRI-SYSTEMS' TRIAL BRIEF*** were served electronically by ECF upon the following:

Steve D. McGee, Esq
Amanda J. Glenn, Esq.
Henry Y. Chiu
Kimble, MacMichael & Upton
smcgee@kmulaw.com
aglenn@kmulaw.com
hchiu@kmulaw.com

Riley C. Walter, Esq.
Walter Law Group

1     rwalter@walterlawgroup.com

2     Henry D. Nunez, Esq.
     Law Office of Henry Nunez
3     lawofficeofhenrynunez@hotmail.com

4     Mark D. Parker
     Parker, Heitz & Cosgrove
5     markparker@parker-law.com

6     John L.B. Smith
     Baker, Manock & Jensen
7     jla@bmj-law.com

8     I declare under penalty of perjury under the laws of the State of Montana that the foregoing is

9 true and correct.

10 Dated this 22nd day of May, 2006.

11 By:    */s/Jon E. Doak*
      *Jon E. Doak*

10